THOMSON (MAGNIAC v.). See Case No. 8,-957.

## Case No. 13,983.

### THOMSON et al. v. MAXWELL.

[2 Blatchf. 385.] [1]

Circuit Court, S. D. New York. July 1, 1852.

CUSTOMS DUTIES—APPRAISED VALUE—SWORN INVOICE—MANUFACTURER—PROTEST.

1. Under the 16th section of the tariff act of August 30, 1842 (5 Stat. 563). and the 8th section of the tariff act of July 30, 1846 (9 Stat. 43), it is the duty of a collector to assess duties upon the appraised value of goods imported by their manufacturer, notwithstanding there is an invoice sworn to by their owner. Those sections are not confined to goods imported by a purchaser.[2]

2. Under the Act of February 26, 1845 (5 Stat. 727), it is a condition precedent to a right of action against a collector for the return of duties paid under protest, that the claimant shall, in his protest, point out to the collector, by positive and direct notice, every particular of fact and of law which he relies upon as protecting his goods from the duties demanded.

[Cited in Pierson v. Lawrence, Case No. 11,-158; Crowley v. Maxwell, Id. 3,449; Curtis v. Fiedler, 2 Black. (67 U. S.) 481; Davies v. Arthur, Case No. 3,611; Id., 96 U. S. 152; Chung Yune v. Kelly, 14 Fed. 641; Muser v. Robertson, 17 Fed. 502; Herrman v. Robertson, 152 U. S. 525, 14 Sup. Ct. 688.]

3. Where a protest was in these words: "We protest against paying additional duty and penalty on" (describing the goods) "they being appraised too high. We claim to have" (naming the amount) "refunded, being amount paid for additional duty and penalty:" Held, that the person making such protest could not, in an action against the collector for the return of the amount so paid, raise any objection to the regularity of the appraisal proceedings.

[Cited in Durand v. Lawrence, Case No. 4,-187.]

4. Where a protest is written on an entry, they compose, in effect, one paper, and it is unnecessary to repeat in the protest the description given of the goods in the entry.

5. Where goods were described in the invoice as "plain Indiana squares," "embd. Indiana hdkfs," "emb. Indiana shawls," "embd. handkfs." and "plain do.," with no allusion to the material of which they were composed, and were described in the entry as "worsted and cotton shawls," and were reported by the appraisers as "wool and cotton, and worsted and cotton shawls, suitable for wear," and as "worsted shawls, suitable for wear," and the protest under which duties were paid on them described them simply as "cotton and worsted shawls," and they were subjected by the collector to a duty of thirty per cent.: Held, in an action to recover back the excess of duties paid beyond twenty-five per cent., there being no evidence explaining the character of the articles, that they were properly chargeable with thirty per cent.,

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] The reverse of this doctrine was held by the supreme court of the United States, in Belcher v. Lawrason, at the December term, 1858, the opinion of the court being delivered by Mr. Justice Nelson. It was there held by that court, that neither the 16th section of the act of August 30, 1842, nor the 8th section of the act of July 30, 1846, has any application whatever to any goods obtained otherwise than by purchase, but that such goods, in regard both to the mode of appraisement and the penalty for undervaluation, are embraced within the 17th section of the act of August 30, 1842. See 21 How. [62 U. S.] 251].

as being "articles worn by men, women or children," and falling within Schedule C. of the tariff act of July 30, 1846 (9 Stat. 44).

6. Where the time of exportation is taken by the appraisers as the time of valuation, and the importer claims that the time of manufacture or production should have been taken, he must make that a ground of protest, and must give evidence to show the incorrectness of the appraisal. Ordinarily, the two periods may properly be treated as the same.

7. Where goods are, on appraisal, valued at more than ten per cent. above the invoice price, they are, nevertheless, not liable to an additional duty of twenty per cent. under the 8th section of the tariff act of July 30, 1846 (9 Stat. 43), if they were manufactured by the importer, or were procured by him in the country of their production otherwise than by purchase.

See Belcher v. Lawrason, 21 How. [62 U. S. 251].

This was an action of assumpsit [by Thomas Thomson and others] against [Hugh Maxwell] the defendant, as collector of the port of New-York, to recover back certain duties and penalties paid by the plaintiffs on two importations of shawls from Liverpool, consigned to them for sale under guaranty by Whitehill & Co., of Paisley, Scotland, the manufacturers and owners of the shawls. The facts were these: On the 8th of September, 1849, four bales of shawls were shipped by the steamer Cambria. Two of the bales, Nos. 255 and 256, were invoiced as containing each 200 "plain woollen shawls;" one bale, No. 257, as containing 144 "plain-shot woollen shawls;" and one bale, No. 258, as containing 100 "woollen tartan long shawls." On the 22d of September, 1849, all four of the bales were entered by the plaintiffs at the custom house in New York as "woollen shawls," at the invoice valuation of £215. 8s. 0d. The public appraisers reported their value to be £263. 16s., with charges, a difference of £48. 8s., or twenty-two per cent. The plaintiffs applied to the collector for an appraisal of the goods by merchant appraisers. That appraisal was made on the 14th of October, 1849, at £258. 16s., and did not diminish the valuation by the public appraisers to within ten per cent. of the invoice valuation. The duties on the appraised value, and a penalty of twenty per cent. thereon, were added at the custom house, and were paid by the plaintiffs under the following protest: "We hereby protest against paying addl. duty and penalty on 255 a 258, being appraised too high. We claim to have $270 70 refunded, being amount paid for addl. and penalty. Thomson, Quick & McIntosh." Two bales of the shawls, Nos. 259 and 260, were imported in the steamer Canada, about the 5th of October, 1849, and were valued on the invoice and entry at £112. 6s. 9d. The public appraisers appraised them as being worth, at the time and place of exportation, £139. 14s., a difference of twenty-four and one quarter per cent. The plaintiffs paid the additional duties, and a penalty of twenty per cent. imposed in conse-

quence of the appraisement, under the following protest: "We also protest against paying addl. duty and penalty, the goods being appraised (259, 260) too high; we claim to have $174 80 refunded." The entry of importations by the Cambria, made by the plaintiffs, included three cases, Nos. 252, 253 and 254, described as "worsted and cotton shawls," which were subjected by the collector to a duty of thirty per cent., and also some cases of "worsted and cotton" goods and some cases of "cotton" goods, which were charged with a duty of only twenty-five per cent. The plaintiffs wrote on the entry: "We hereby protest against the payment of 30 per cent. duty charged on all cotton and worsted shawls contained in this entry, claiming to enter the same at 25 per cent. We pay the amount exacted, in order to get possession of the goods, claiming to have the difference refunded. Thomson, Quick & McIntosh." By a note on the invoice, the appraisers reported the three cases, Nos. 252, 253 and 254, as "wool and cotton, and worsted and cotton shawls, suitable for wear." The invoice description of these three cases was: "plain Indiana squares," with no allusion to the material of which they were composed. The entry of importations by the Canada, made by the plaintiffs, included three cases, Nos. 261, 262 and 263, described as "worsted and cotton shawls." These were subjected to a duty of thirty per cent. The plaintiffs wrote on the entry a protest, the same in language as that on the entry of cases Nos. 252, 253 and 254 by the Cambria. Case No. 261 was described in the invoice as containing "embd. Indiana hdkfs." and "emb. Indiana shawls;" case No. 262 as containing "plain Indiana squares;" and case No. 263 as containing "embd. handkfs." and "plain do.;" and all three were returned by the appraisers as "worsted shawls, suitable for wear." The other facts necessary to an understanding of the case are sufficiently stated in the opinion of the court. At the trial before Betts, J., and a jury, in October, 1851, a verdict was rendered for the plaintiffs for $600, subject to the opinion of the court upon a case to be made, and subject to adjustment at the custom house.

Elias H. Ely, for plaintiffs.

J. Prescott Hall, Dist. Atty., for defendant.

BETTS, District Judge. The main proposition urged by the plaintiffs on the question of valuation is, that the invoice, sworn to as required by statute, must be taken as proof of the true value of the goods in the foreign market, until it is disproved by legal evidence produced on the part of the government. The plaintiffs deny that either the appraisement by the official appraisers, or that by the merchant appraisers, amounts to such evidence. We do not deem it necessary to review the reasoning urged in support of

this position, as, in our opinion, the point is covered by express enactments in the tariff laws and by the decision of the supreme court.

It is enacted by the 16th section of the act of August 30, 1842 (5 Stat. 563), that in all cases where there is or shall be imposed any ad valorem rate of duty on any goods, &c., imported into the United States, it shall be the duty of the collector within whose district the same shall be imported or entered, to cause the actual market value or wholesale price thereof, at the time when purchased, in the principal markets of the country from which the same shall have been imported into the United States, &c., to be appraised, estimated and ascertained, &c.; and it shall be the duty of the appraisers, &c., by all reasonable ways and means in their power, to ascertain, estimate and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, &c. The 8th section of the act of July 30, 1846 (9 Stat. 43), re-affirms these directions. That this enactment embraces goods imported by their manufacturer, as well as goods imported by a purchaser, is made manifest by the proviso to the 16th section of the act of 1842, if any doubt might be fairly raised in that respect from the expression, "the time when purchased," used in the enacting clause. But we think that the general and positive language of the act would not be qualified by that expression, so as to be limited to purchasers. The invoice and the owner's affidavit, accordingly, place no impediment in the way of the collector, to prevent his assessing duties upon the appraised valuation, nor can he be required, in the first instance, to produce extraneous evidence contradicting such affidavit or supporting the appraisement. Rankin v. Hoyt, 4 How [45 U. S.] 327.

It is proper to advert to another ground of objection taken to the appraisement, and earnestly insisted on by the plaintiffs' counsel, before stating what, in our judgment, are the controlling considerations in this case. That objection is, that the appraisement is nugatory and void: (1) Because the collector acquired no authority, under the facts in the case, to order it. (2) Because he in fact did not direct it to be made. (3) Because he did not designate, as required by law, one out of every twenty packages to be appraised. (4) Because the official appraisers, in acting in the matter, did not all of them act together. (5) Because no one of them ever saw the goods which they appraised. (6) Because neither the official appraisers nor the merchant appraisers were legally qualified, the proper oath not having been administered to them. (7) Because the appraisal was not made at the proper place. A carefully prepared argument was presented to the court in maintenance of these various suggestions against the validity of the appraisement. We do not discuss the correctness of these positions or of the objection itself, because, in our opinion, the plaintiffs have not placed themselves in a situation which entitles them to demand the judgment of the court upon the correctness of either.

This action is brought against the defendant to recover back moneys received by him in his official character, for the United States, which have been paid into the treasury. Upon general principles of law, the action would not be maintainable unless notice had been given to the defendant, before such payment over was made by him, that he had no authority to exact the duties and that the plaintiffs would claim their return. Elliott v. Swartwout, 10 Pet. [35 U. S.] 137; Bend v. Hoyt, 13 Pet. [38 U. S.] 263; Aldridge v. Williams, 3 How. [44 U. S.] 9.

Congress, by the act of February 26, 1845, (5 Stat. 727), regulated the rights of the merchant and those of the collector in this respect, and, after recognizing the liability of collectors to be sued for duties illegally exacted, after the payment of such duties into the treasury, enacted as follows: "nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing and signed by the claimant at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." These provisions are conditional to a right of action on the part of an importer, a proper protest in the case being the basis of the action and a fundamental pre-requisite to a recovery. The courts exact a strict compliance with these conditions. Chief Justice Taney says, that the words requiring the claimant to set forth distinctly and specifically the grounds of his objection to the demand of duties, are too emphatic to be regarded as mere surplusage, or to be overlooked in the construction of the law, and that the object of the provision is, to prevent a party from taking advantage of objections when it is too late to correct them. Mason v. Kane [Case No. 9,241], Circuit Court, Maryland district, April term, 1851.

We think there is a manifest propriety in adhering closely to the provisions of this law. It is intended by congress to settle all uncertainty as to the manner in which collectors can be made responsible in actions for duties collected under protest, and the motive to its enactment seems palpably to have been, to take from parties the power of imposing upon collectors damages and costs by personal suits in respect to their official transactions, unless they were plainly and directly apprised, at the time they received the duties, what objections the claimant had to the payment. It is most reasonable that a public officer should be put on his guard against a mistake or error in the exercise of his functions prejudicially to another, who is cognizant of the error and intends to hold him responsible for it, by an explicit notice

from such person to him of his error in fact or in law. He might thus at once correct the wrong, without delay or expense to either party. The great number of prosecutions against the collector, with which the dockets of this court have been crowded of late years, founded upon claims for return duties, admonishes the court that it is important to the maintenance of uniformity in custom house transactions, as well as to the interests of the importers and of the government, that the precautions wisely enacted in this law should be rigidly enforced in every instance.

The party who offers his goods for entry has the means of ascertaining at once whether any well-founded objections exist for contesting the legality of the rate of duties demanded at the custom house, and, if he neglects to lay those objections before the collector, or omits to make the inquiries necessary to his own information on the subject, it is right that the loss resulting from his inattention or remissness should be borne exclusively by himself. We understand the act of 1845 to be imperative in its character. But, independently of the solicitude of the court to execute faithfully all the directions of a public law, we are convinced that, on general principles, a peremptory law of that character will prove to be not less salutary and important to the navigation and trade of the country than to the fiscal operations of the government. We shall persevere in applying the rule adopted in the present case to all others coming before us for judgment, and in holding that the claimant must, in his protest, point out to the collector, by positive and direct notice, every particular of fact and of law which he relies upon as protecting his goods from the payment demanded.

Testing by this rule the protests put in by the claimants in this case, it is obvious that they afford no indication to the collector that he or the other officers of the customs had committed any irregularity in the mode adopted for ascertaining or imposing the duties demanded. We accordingly lay out of view all the allegations made on the argument respecting the regularity of the proceedings at the custom house preparatory to an appraisal of the goods, and the competency of the oath administered to the appraisers, and the necessity that all the appraisers should act together in examining the goods, and the sufficiency of the report made by them to the collector, or of his directions to them, or of their memoranda upon the invoices or the entries. The protests specify none of these particulars, and the claimants must be held to be debarred of all objections which are not distinctly and specifically pointed out in the protests or made certain by the papers which accompany them. Had the collector been notified that an improper oath had been administered to the appraisers, or that they had been guilty of irregularities in making the appraisement, or of any lack of form or substance in the proceedings in the custom house, it would have been in his power, and we are to presume it would have been his desire, to rectify them at once, and thus save all the delay and expense of a judicial investigation into the matter. We are persuaded the purpose of the law cannot be sustained without holding to this interpretation and application of its provisions. We accordingly hold that this branch of the case, which was most strenuously urged upon the argument, cannot be made a ground of contestation on the pleadings and proofs as they are presented. The points and objections taken in this behalf are, therefore, overruled.

The protests in this case are written upon the entries, and, the two papers being thus before the collector, the plaintiffs are entitled to avail themselves of the descriptions given of the goods in the entries, the same as if those descriptions were repeated in the protests—the protest and the entry composing, in effect, in respect to the notice to the collector, one paper. This point has been repeatedly before this court, and has been uniformly ruled in this way.

No evidence was given on the trial in respect to the character of the "worsted and cotton shawls" imported by the Cambria, nor any reason shown why they should be subject to thirty per cent. duty rather than twenty-five per cent., other than the note or report of the appraisers on the invoice; and the court has nothing to guide its judgment, except to compare the description of the goods with the provisions of the tariff act, and thus ascertain whether the statute determines the question.

Articles liable to a duty of thirty per cent. are enumerated under Schedule C., in the 11th section of the act of July 30, 1846. In this schedule are classed: "Articles worn by men, women or children, of whatever material composed, made up, or made wholly or in part by hand;" "manufactures of cotton" "or worsted, if embroidered or tamboured, in the loom or otherwise, by machinery or with the needle or other process." Articles subject to a duty of twenty-five per cent. are classed under Schedule D.; in which list are enumerated "cotton laces, cotton insertings, cotton trimming laces, cotton laces and braids, manufactures composed wholly of cotton, not otherwise provided for." The "worsted and cotton shawls," imported by the Cambria, do not, by the name of "plain Indiana squares," fall under any specific denomination embraced within either Schedule C. or Schedule D. The entry of them as "worsted and cotton shawls" restrains the plaintiffs from claiming that they should be classed with any of the descriptions of cotton manufactures enumerated under Schedule D. If they were "embroidered" or "tamboured," they are specifically provided for in Schedule C.; and they may very fairly be

denominated "articles worn by men, women or children," and thus be placed under the thirty per cent. rate of duty.

Acting upon the protest, invoice and entry, without any evidence explaining particularly the character of these articles, we must regard the classification of them made at the custom house as correct, and must hold that a duty of thirty per cent. was properly imposed on them.

The "worsted and cotton shawls" imported by the Canada have been entered by the plaintiffs under that designation, and, as they furnish no evidence that the articles are not those "worn by men, women or children," or that any specification in Schedule D. applies to them, we think the collector properly subjected them to a duty of thirty per cent.

We are, accordingly, of opinion, that the plaintiffs have shown no ground for a recovery against the defendant for any excess of duties exacted from them beyond what the law authorized.

As to the woollen shawls, the appraisers took the period of their exportation as that of the valuation, and no evidence is adduced showing an over-appreciation of them on that basis. The plaintiffs insisted, on the argument, that the time when and the place where the goods were manufactured or produced must be adopted as governing their prices. But, admitting the law to be so, the plaintiffs have not made that a ground of protest, and they fail to prove that Paisley was the chief place or market of the country of exportation, or what was the real time of manufacture or production, or whether there was any difference of prices between the time of manufacture or production and the time of exportation. In ordinary usage, the two nearly coincide, or approximate so closely as to be properly treated as the same. It has already been shown that the invoices themselves do not countervail the appraisements, and the plaintiffs give no evidence that the invoices were dated or made up prior to the times of exportation, so as to be entitled to appeal to the invoices as indicating that the goods were purchased or otherwise procured at earlier dates. Therefore, no foundation is laid for questioning the justness of the appraisals, and they must stand as fixing the dutiable value of the woollen shawls

We think the collector had no authority in law to impose an additional duty of twenty per cent. on the prices as so raised. The goods were owned and imported by the manufacturer, and were not obtained at the place of exportation, or in a foreign country, by purchase. In the case of Greely v. Thompson, 10 How. [51 U. S.] 225, this point was directly determined by the supreme court, and it was settled by that case, that, under the provisions of the 8th section of the tariff act of July 30th, 1846 (9 Stat. 43), the importer is not liable to the additional duty of twenty per cent. when the goods were man-

ufactured by him, or were procured by him in the country of their production otherwise than by purchase, although on appraisement their prices be advanced more than ten per cent. above the invoice prices. Accordingly, the plaintiffs are entitled to recover $196 60, the penalty paid on the invoice by the Cambria, with interest from October 6th, 1849, and $135 20, the penalty paid on the invoice by the Canada, with interest from October 13th, 1849; and the defendant is discharged from all the demands of the plaintiffs for the re-payment of duties on the appraised valuations. Judgment accordingly.