# Shoch *versus* Shoch's Executors.

1. Previous to a marriage, a written contract was executed by the parties, in which the intended husband agreed that if he died first, he would order his executors or administrators to put $1000 to interest for the use of the female, whilst she remained his widow: and, further, that she should have a right to the household furniture which she may bring with her: and the female, on her part, agreed that she would "*desire*" no more of the husband's *estate* than as above mentioned. In his will, the husband made provisions according to the contract. The wife, after the death of the husband, *released* the executors from all claim against the estate of her late husband, real or personal, except the annual interest, acknowledging the receipt of most of her personal property; and payment in lieu of the residue of it: Held, that the word *estate*, as used in the marriage contract, was not limited to *real estate*, but included both real and personal.

2. The marriage contract being executed with a view to the marriage, was not liable to objection as a restraint on marriage; and the female having expe-

[Shoch v. Shoch's Executors.]

rienced the advantages of the contract during her husband's lifetime, and the benefit of its stipulations after his decease, and having released the executors from all claim to the estate of the deceased, real or personal, was precluded from recovering any further portion of it.

ERROR to the Common Pleas of *Union county.*

This was an issue directed by the Court of Common Pleas of Union county, to determine whether Christina Shoch, the plaintiff, widow of Jacob Shoch, deceased, was entitled to recover the one-third of the personal property left by said Jacob Shoch at his decease, and dower in real estate, or either. The executors of his will were defendants.

Jacob Shoch, on the 2d day of October, 1832, intermarried with Christina, the plaintiff in this issue. On the same day, but previous to the marriage, a writing was signed by them, purporting to be a marriage contract, in which it is stated that, in consideration of certain engagements on his part, she "shall desire no more of Jacob Shoch's estate." On the 20th of January, 1849, said Jacob made his last will and testament, which, after his death, to wit, on the 18th day of December, 1850, was proved. In the will he bequeathed to her the interest of $1000, to be paid to her yearly, during her life or widowhood, being what was mentioned in the written agreement aforesaid. This she refused to accept; and after the year had expired from the time of her husband's death, she had the executors cited to file an account. The inventory of the personal estate amounted to upwards of $10,000. They filed an answer, and the Court directed an issue to the Common Pleas, to try whether she was entitled to one-third of the personal estate, and dower in the real estate, or to either.

In the marriage contract, Jacob Shoch agreed that he never would ask any property "belonging to her children by her former husband, coming from their father or grandfather;" that if he should die before the said Christina, he would order his executors to put $1000 to interest, which interest she was to receive annually during the time she remained his widow. He further engaged, that if he died before her, she should have the right to remove all the household furniture she may bring with her. She agreed to marry him on the terms stated in the agreement—declared that she was fully satisfied therewith, and that she would "desire no more of Jacob Shoch's *estate* than what is above mentioned," provided he died before her.

In his will Jacob Shoch bequeathed to his wife all the household goods she brought to him, which he then had; and also $60 annually to be paid to her during her life or widowhood. On the 15th February, 1851, she executed a release to the executors, in which she acknowledged the receipt of certain personal property, and also of $19, the value of certain hogs and sheep, and released the executors from all claim she had against the estate

Y

of the deceased, real or personal, or any right of dower therein; reserving, however, the right to the annual interest of $1000 during her widowhood.

On the trial it was contended, on the part of the plaintiff, that the agreement of 2d October, 1832, purporting to be a marriage contract, was not binding. That it was void as being in restraint of marriage. That, if it is valid, it cannot affect her right to one-third of the *personal* property, as the word " *estate*" has reference to nothing but the *real* property, and the only *legal* construction that could be put on the instrument of writing, would be to bar her right to dower.

WILSON, J., instructed the jury, that the word *estate*, as used in the alleged marriage contract, included both real and personal property; and he directed a verdict for the defendants.

Error was assigned to the admission in evidence of the marriage contract, of the will, the release, the receipt to the executors of the $19, and of evidence of the tender to the widow of $60 for interest; also of the bond showing the investment of $1000, as directed by the will.

*Miller* and *Van Geser*, for plaintiffs in error.

*Slenker* and *Casey*, for defendants.

The opinion of the Court, filed Sept. 28, was delivered by

LEWIS, J.—This is an issue to determine the question "whether the plaintiff was entitled to recover one-third of the personal property of the decedent, and dower, or either;" and the Court below directed a verdict for the defendants. The word "estate," in the marriage contract of the 2d October, 1832, was not used in the sense which confines it to the real estate of the husband; but, when taken in connection with the other parts of the agreement, must be understood as embracing his whole estate, real and personal. The fair construction of the agreement is, that the wife, in consideration of the provisions contained in it for her benefit, and for the benefit of her children by a former husband, accepts of those provisions in lieu of her claims upon his real and personal estate under the intestate laws, and releases all further demands. It is true that in ancient times "real estate was the principal favorite; and our first legislators entertained a low and contemptuous opinion of all personal estate. There is not a chapter in Britton, or the Mirror, that is devoted to a discussion of the rules which govern this species of property; and the little that is to be found in Glanvil, Bracton, and Fleta, seems principally borrowed from the civilians. But of later years, since the introduction and

[Shoch *v.* Shoch's Executors.]

extension of trade and commerce, which are entirely occupied in this species of property, and have greatly augmented its quantity, and of course its value, we have learned to conceive different ideas of it:" 2 *Bl.* 385. Courts now regard a man's personalty in a light nearly if not quite equal to his realty, and have adopted a more enlarged and less technical mode of considering the one and the other: 2 *Bl.* 385. Under this change of circumstances the word " estate," when used in an instrument of writing, is no longer understood as referring exclusively to real estate, but may properly embrace real and personal estate, if such be the intention of the parties. That this was the intention in the case before us, is too clear for argument.

There is nothing in the agreement which renders it void on account of its tendency to restrain marriage. We cannot close our eyes to the fact that its object was to promote a marriage, and we infer from the evidence that it was the means of accomplishing that desirable result. With this evidence of its wholesome tendency in this particular, we do not perceive the logical propriety of condemning it for an opposite one. And after the plaintiff has enjoyed all the advantages of the contract during her husband's life, and by virtue of its provisions has since his death resumed the possession of the personal property which belonged to her before marriage, and executed a release to her husband's executors of all claims except those held under the contract, there is a principle of natural justice which estops her from impeaching it. Honesty is always the best policy.

The Court below committed no error either in directing a verdict for the defendants, or in any of the preliminary proceedings which led to that result.

Judgment affirmed.