## Tiernan *versus* Binns et al., Executors.

Where a woman about to marry, in an ante-nuptial contract, "relinquishes all right of dower, and all interest of any kind whatsoever to which she might be entitled in the estate of " her intended husband" " by reason of her marriage," she waives her right to $300 of her husband's estate under the Act of April 14th 1851.

2. Dillinger's Appeal, 11 Casey 357, followed.

November 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1879, No. 167.

Case by Elizabeth Tiernan, widow of John Tiernan, against Gibson Binns and Nathan Brightwell, executors of said John

Tiernan.   The action was to recover $300, which she claimed as the widow of the decedent, under the provisions of the Act of April 14th 1851.

At the trial it appeared that the plaintiff and John Tiernan were married on the 20th of October 1867.   On the day before their marriage they executed an agreement as follows :

" Articles of agreement and covenant made and entered into the 19th day of October, in the year of our Lord one thousand eight hundred and sixty-seven, by and between John Tiernan, of Fayette city, Fayette county, Pennsylvania, of the one part, and Elizabeth Evans, of the same place, of the other part, as follows, to wit : Whereas, a marriage is intended to be shortly had and solemnized between the said John Tiernan and the said Elizabeth Evans ; and whereas, each of the said parties owns and possesses a certain separate and several estate, in real and personal property ; and whereas it is the wish and desire of said parties that the marriage aforesaid, shortly to be had and solemnized, shall in no wise affect the relation now existing with regard to their several and separate estates, except as hereinafter provided : It is hereby agreed, by and between the parties aforesaid, that from and after the solemnization of the marriage as aforesaid, the ownership and control of all property, real, personal and mixed, shall continue and remain with the parties hereto respectively in the same state and condition as the same existed previous to the date of the solemnization of the said marriage.   The said Elizabeth Evans hereby relinquishes all right of dower, and all interest of any kind whatsoever to which she might be entitled in the estate of the said John Tiernan by reason of the marriage aforesaid, except as hereinafter provided, and the separate estate of the said Elizabeth Evans shall, at all times during her coverture as the wife of the said John Tiernan, be subject to her own disposition and control, and at her death to descend to her legal heirs in like manner as if the aforesaid marriage had never occurred.   The said John Tiernan hereby relinquishes any interest whatsoever in the separate estate of the said Elizabeth Evans to which he might be entitled by reason of the marriage aforesaid, and retains the entire control of his undivided estate, and the right to dispose of the same at his option, and at his death the same is to descend to his proper heirs according to law, in like manner as if the marriage aforesaid had never occurred.   In consideration whereof the said John Tiernan, for himself, his heirs, executors and administrators, doth covenant, promise and agree, to and with the said Elizabeth Evans, her heirs and assigns, by these presents, that he, the said John Tiernan, his heirs, executors and administrators, or some of them, shall and will well and truly pay, or cause to be paid, unto the said Elizabeth Evans, her executors, administrators or assigns, the sum of fifty dollars for each and every year during the continuance of the marriage aforesaid, said

[Tiernan *v.* Binns.]

sum to be paid in the aggregate at the dissolution of said marriage by the death of either of the parties or otherwise.

"In witness whereof the said parties to these presents have hereunto set their hands and seals the day and year above written.

JOHN TIERNAN.          [SEAL.]

her

ELIZABETH  ×  EVANS.          [SEAL.]

mark.

"Signed, sealed and delivered in the presence of

GEORGE WHITING."

John Tiernan died on the 11th of July 1877, he and plaintiff having lived together as husband and wife for ten years. At the time of his death he was possessed of about $15,000 in personal and $10,000 in real property. At the time of making the ante-nuptial contract and of their marriage, he was worth, according to his own statement, at least $20,000.

Mrs. Tiernan was worth at the date of the marriage about $2000. John Tiernan, by his will, gave Mrs. Tiernan $100 over and above what he agreed to pay her under their contract. Shortly after his death, Mrs. Tierman made a written demand for the $300, and upon the refusal of the executors to pay the same, brought this suit.

The first and third points of plaintiff, both of which the court, Willson, P. J., refused, were as follows:

1. That the plaintiff, as widow of John Tiernan, deceased, is entitled to recover under the evidence in this case, notwithstanding the ante-nuptial agreement set up by defendants.

3. That the ante-nuptial contract set up by defendants is without consideration and therefore void, and cannot defeat plaintiff's right to recover.

The second point of plaintiff, which the court affirmed, was as follows:

That the parties to the ante-nuptial contract set up by defendants were not like buyer and seller, dealing at arms' length, but stood in a confidential relation, calling for the exercise of the richest good faith, and that if the provision secured for the wife was unreasonably disproportionate to the means of the intended husband, it raises the presumption of designed concealment, and throws upon him the burden of disproof, and if the defendants in this case have failed to make such proof, in case the jury should believe that the provision for plaintiff was unreasonably disproportionate to his estate or means at the time of the entering into the contract, then the plaintiff is entitled to recover.

Verdict for defendants, and, after judgment, plaintiff took this writ, assigning for error the refusal of the above points.

[Tiernan *v.* Binns.]

*W. H. Playford*, for plaintiff in error.—The words of a contract of this kind should not be extended beyond their technical meaning: Ellmaker *v.* Ellmaker, 4 Watts 89.

In Compher *v.* Compher, 1 Casey 31, the court say : " When a widow accepts a provision made for her in the will of her husband, she cannot claim her rights under the intestate laws ; but this does not apply to the $300 which she is entitled to retain by the Act of 1851."

The words of the Act of Assembly are, that she may retain either real or personal property belonging to the estate, to the value of $300. The executor or administrator has nothing to do with it, but set it out and have it appraised, provided that she is of her husband's household at the time of his death.

Should the ante-nuptial agreement in this case be extended beyond the widow's right of dower and her interest under the intestate laws ?

*Boyle & Mestrezat*, for defendants in error.—No decided case rules this question in favor of the plaintiff ; while it seems to us very clear that Dillinger's Appeal, 11 Casey 357, decides it against her, notwithstanding the difference between the facts. That was a post-nuptial contract, and provided for a separation. It stipulated that the wife " shall not claim at any time or times hereafter any right or title which the said Ann Dillinger now hath or may have to any jointure, dower or thirds, into and out of the estate, real, personal or mixed, of which the said John Dillinger now or hereafter may be seised or possessed." The right of the wife to any interest of any kind in her husband's estate, was denied and refused, not because of the separation, not because of her adultery, but because by the articles she had renounced her right and surrendered her interest. (See Ruth Bieren's Appeal, *post*, p. 265.— Rep.)

Mr. Justice Paxson delivered the opinion of the court, January 5th 1880.

This was an action brought by Elizabeth Tiernan, the widow of John Tiernan, deceased, against his executors, to recover the sum of $300, the value of the property which they had refused to set apart to her, after demand made in writing under the Act of 14th April 1851. The refusal of the executors was based upon an ante-nuptial contract executed by the plaintiff and the defendant's testator the day before their marriage, in which the said plaintiff, for the consideration therein mentioned, relinquished to the said John Tiernan "all right of dower and all interest of any kind whatsoever to which she might be entitled in the estate of the said John Tiernan by reason of the marriage aforesaid."

It was held in Kline's Estate, 14 P. F. Smith 122, that the

[Tiernan *v.* Binns.]

parties to an ante-nuptial contract were not dealing at arms' length, like buyer and seller, but stood in a confidential relation, calling for the exercise of the richest good faith, and while it might not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife was unreasonably disproportionate to the means of the intended husband, it raised the presumption of designed concealment, and threw upon him the burden of proof. And see Kline *v.* Kline, 7 P. F. Smith 120.

The bona fides of this contract has been settled by the verdict of the jury in favor of the defendants. The plaintiff's second point, which was affirmed by the court below, was in the precise language of the ruling in Kline's Estate. The fact is therefore established in the cause that the ante-nuptial contract was executed in entire good faith and without any concealment of material facts on the part of the husband.

This leaves but the single question, whether, notwithstanding the contract, the plaintiff is entitled to the widow's $300 under the Act of 14th April 1851. It was contended for the plaintiff that the ante-nuptial contract is without consideration and therefore void. If this were so, the plaintiff would be entitled not only to her $300, but to her entire interest in the estate as widow. It is plain, however, that the contract is supported by a sufficient consideration. It is under seal; it recites the proposed marriage; that each of the said parties is the owner of separate estate, real and personal; that it is desirable that the marriage shall "in no wise affect the relation now existing with regard to their several and separate estates except as hereinafter provided;" the wife relinquishes all interest in the husband's property, and the husband relinquishes all interest in the wife's estate, and covenants to pay her the sum of $50 for each year during the continuance of the marriage, said sum to be paid in the aggregate at the dissolution of the marriage. Here was ample consideration. Besides, marriage itself is a good consideration, and in the absence of actual fraud, will prevail even against creditors: Frank's Appeal, 9 P. F. Smith 190.

Conceding the validity of the contract, is the plaintiff entitled to her $300? The words of the release are very broad. She relinquishes "all right of dower and all interest of any kind whatever" in the estate of John Tiernan. The Act of 1851 is a part of our statutes of distribution. It operates only upon the estates of decedents. Prior to its passage, the widow had a certain statutory interest in the estate, real and personal, of her deceased husband, whether testate or intestate. The Act of 1851 extended that interest by allowing her to retain for the use of herself and family $300 of the property, either real or personal, and this whether the estate is solvent or insolvent. It withdraws so much

[Tiernan *v.* Binns.]

of the estate from general administration even as against creditors, except liens for the purchase-money of real estate elected to be retained, and applies it for the benefit of the widow and children: Compher *v.* Compher, 1 Casey 31. If there are no children, the widow takes it absolutely. Such is the case here. We are not embarrassed by the question of the possible rights of minor children for whose benefit the act was in part intended. It is plain that the Act of 1851 gives the widow an interest in her husband's estate, just as prior acts had conferred like rights, though differing in extent. It comes within the precise terms of the antenuptial contract.

If authority were needed for so plain a proposition, it may be found in Dillinger's Appeal, 11 Casey 357. In that case the husband and wife, by articles of separation, agreed to live apart, the husband covenanting to give a portion of his property to a trustee for the use of the wife, and the wife and her trustee covenanting, in consideration thereof, that she would not at any time thereafter claim any jointure, dower or thirds out of his estate. The husband performed his part of the contract, and the wife, in his lifetime, contracted a second marriage. It was held that the articles of separation were binding on the wife in equity, and that on the husband's death she was not entitled to any portion of his estate; also, that she was not entitled as widow to the $300 given by the Act of 1851. While the above facts differ from the case in hand, especially in this, that the wife contracted a second marriage, and was therefore guilty of adultery, yet it was not decided on this ground, WOODWARD, J., saying: "We rest our judgment altogether on the articles of separation, which we hold are conclusive against all the pretensions of the appellant."

I see no reason why the law should regard with disfavor an antenuptial contract, especially where, as here, it was entered into by parties, each of whom was advanced in years, with separate children and separate estates. Persons so situated do not usually act from mere impulse, or contract without consideration. Such family arrangements, in many instances, reconcile differences and avoid unpleasant disputes. Where they are free from fraud, there is no reason why they should not be enforced.

Judgment affirmed.