## FOUGERA *v.* UNITED STATES (No. 134).[1]

1. PRESUMPTION AS TO COLLECTOR'S FINDING.

   There is such a presumption in favor of a collector's finding as to the actual character of a commodity that this presumption is to be overcome only by a preponderance of proof that the article in question was something other than it was declared by the collector to be.

2. INTERNAL-REVENUE CIRCULAR.

   A circular of the Commissioner of Internal Revenue fixing the taxable status of a commodity will not control in fixing the dutiable status of the same commodity on importation. Here, it would appear, the instructions of the commissioner tend to confirm rather than to negative the finding of the collector of customs.

3. FRENCH RECIPROCITY TREATY.

   The article was not covered by the French reciprocity treaty.

4. DUCRO'S ALIMENTARY ELIXIR.

   Ducro's Alimentary Elixir was dutiable under paragraph 67, tariff act 1897.

### United States Court of Customs Appeals, January 7, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York (T. D. 29690).
   [Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane,* of counsel) for appellant.
*D. Frank Lloyd,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

A certain mixture or compound known as Ducro's Alimentary Elixir, imported at the port of New York, was assessed by the collector of customs as a medicinal preparation containing alcohol, at 55 cents per pound, under the provisions of paragraph 67 of the tariff act of July 24, 1897, which reads as follows:

67. Medicinal preparations containing alcohol, or in the preparation of which alcohol is used, not specially provided for in this Act, fifty-five cents per pound, but in no case shall the same pay less than twenty-five per centum ad valorem.

The importers protested that this elixir was a compound liquor dutiable at $1.75 per gallon under paragraph 289 or paragraph 292, schedule H of said act, by virtue of the reciprocity treaty entered into between the United States and France on May 30, 1898, or under said paragraphs by similitude, or at 10 or 20 per cent ad valorem as an article not enumerated or provided for.

---

[1] Reported in T. D. 31208 (20 Treas. Dec., 65).

The board overruled the protest and the importers appealed to the United States Circuit Court for the Southern District of New York, which appeal is now before this court by virtue of a transfer made in accordance with the tariff act of August 5, 1909.

The only question to be decided in this case is, Was the decision of the Board of General Appraisers affirming the collector's classification of the importation as a "medicinal preparation containing alcohol" warranted by the evidence? We think it was. The appraiser returned the merchandise as a "medicinal preparation containing 23 per cent alcohol, which is used medicinally as a tonic, an appetizer, and a reconstituent." The labels or the circulars accompanying the preparation announce that it is a remedy to be administered in cases of anæmia, chlorosis, phthisis, consumption, and other diseases. The collector found that the elixir was a medicinal preparation containing alcohol and assessed it for duty as such. On the hearing the importer introduced no evidence save and except a letter and circular issued by the Commissioner of Internal Revenue, directing that the special tax required of liquor dealers be collected from those making sales of certain enumerated "alcoholic medicinal preparations," among them Ducro's Alimentary Elixir. The pertinent and material parts of the letter and circular are as follows:

TREASURY DEPARTMENT,
OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
*Washington, January 11, 1908.*

GENTLEMEN: This office is in receipt of your inquiry of the 8th instant as to the form of liquor tax which must be paid by druggists and others who handle certain preparations held by this office to be insufficiently medicated to render them unsuitable for use as a beverage.

In reply, you are informed that the law requires the payment of a tax of $25 by retail dealers in liquors and defines a retail dealer as "every person who sells or offers for sale foreign or domestic distilled spirits, wines, or malt liquors * * * in less quantities than five gallons at the same time." This provision of law is held to apply equally to saloon keepers and druggists who sell uncompounded alcohol and spirits or the *class of preparations referred to above, held by this office to be properly classifiable as compound liquors,* and no distinction is made in the special-tax stamps evidencing the payment of tax either by saloon keepers or druggists.

Respectfully,                                          JOHN G. CAPERS, *Commissioner.*
E. FOUGERA & Co.,
*90 Beekman Street, New York, N. Y.*

---

TREASURY DEPARTMENT,
OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
*Washington, December 3, 1907.*

*To collectors of internal revenue and revenue agents:*

For your guidance is published the subjoined list of alcoholic medicinal preparations, which have been analyzed by this office and classed as compound liquors under the ruling in T. D. 1251 and for sales of which the special tax of liquor dealer is required.

*It must be clearly understood, however, that the list here given is not exclusive and does not purport to give names of all the preparations for the sale of which special tax is or*

*may be required* but embraces only those which have been analyzed by this office and *held to be insufficiently medicated* to render them unsuitable for use as a beverage. The names of a number of preparations which have been held in previous rulings and letters to be suitable for such use the manufacture of which has been discontinued or the formulas so modified as to change their classification are omitted.

For the sale subsequent to January 1, 1908, of any of the preparations here given *or of any other preparations which do not come within the requirements of the law as to medication, as interpreted in T. D. 1251,* special tax will be required, even though such sale is made in good faith for medicinal purposes.

The names of such additional preparations as are analyzed and classed with those here given will be published from time to time in Treasury Decisions, and whenever the number justifies, also as a circular.

The question of the proper classification of the various malt extracts now on the market is still under consideration, and the conclusion, when reached, will be announced in a later circular. Collectors are directed to place a copy of this circular in the hands of every druggist in their districts who has not already paid special tax as retail liquor dealer.

\*        \*        \*        \*        \*        \*        \*

Ducro's Alimentary Elixir.

\*        \*        \*        \*        \*        \*        \*

JOHN G. CAPERS, <em>Commissioner.</em>

From both letter and circular it is evident that the commissioner did no more than rule that certain preparations should be classified *for internal-revenue purposes* as compound liquors, not because they were not medicinal, but because their medication was not sufficient to render them unsuitable as beverages. Far from holding that the goods were not what they purported to be, he referred to them explicitly as "alcoholic medicinal preparations," and his classification of them as liquors can not by any fair interpretation of the language which he used be turned into a finding that they were unsuited for medicinal uses or that they were not "alcoholic medicinal preparations." Indeed, he expressly says that his ruling applies to such preparations, notwithstanding the fact that they may be sold "in good faith for medicinal purposes." But if the commissioner had not considered the elixir a medicinal preparation—even if his classification, made exclusively for internal-revenue purposes, could possibly raise a presumption that a similar classification should obtain for customs purposes—nothing more could follow than that the presumption arising from his ruling would balance the presumption necessarily attaching to a decision made by the collector of customs in the line of official duty, which condition of the proof would leave the importer just where he started—without a preponderance of evidence to sustain his protest. The decision of the collector carries with it the presumption of correctness, and the burden of overcoming that presumption by proper proof is on the importer. Arthur *v.* Unkart (96 U. S., 118, 122); Erhardt *v.* Schroeder (155 U. S., 124, 130); Pickhardt *v.* United States (67 Fed. Rep., 111, 113); United States *v.* Rosenwald (67 Fed. Rep., 323); Thomson *v.* Maxwell (23 Fed. Cas., 1100); Vandiver *v.* United States (156 Fed. Rep., 961).

There is no provision in the treaty with France which covers or refers to "medicinal preparations containing alcohol," and there is therefore nothing in that document which would entitle such preparations to admission at any less rate of duty than that specified in paragraph 67, above cited.

We hold to the view that the decision and finding of the collector was not overcome by evidence on the part of the importer, and therefore it is unnecessary to pass upon any of the other points discussed on the argument of the appeal or in the briefs of counsel.

The decision of the Board of General Appraisers is *affirmed.*