## Loesch's Estate

C. D. Higby, for petitioner.
Craig, Blass & Jones, for respondent.

WAITE, P. J., July 31, 1935.—This matter is before the court on petition of Anna M. Loesch, widow of Eugen Loesch, deceased, asking that the executors of said estate be directed to make payment to her out of the personal estate of the sum of $15,000 provided for in an antenuptial agreement and that the unpaid balance, if any, be made a lien upon decedent's real estate.

The answer filed admits that petitioner under said agreement is entitled to the sum of $15,000 to be paid out of the decedent's personal estate, but denies that any part of the same may be made a lien upon decedent's real estate, avers that there is sufficient personal estate for the payment of the said amount, and further alleges that the said decedent in his lifetime purchased with his own funds five certain bonds and mortgages having a face value of $18,000, title to which was taken in the joint names of decedent and petitioner, and intended as payment or security for the payment of the sum provided for in the said antenuptial agreement.

It was urged by the attorney for the petitioner at the hearing and subsequently at the argument that the petitioner claims title to the said bonds and mortgages as a gift from decedent in his lifetime in addition to the amount provided for in the antenuptial agreement.

The $15,000 payment provided for in the antenuptial agreement, if not paid during the lifetime of Eugen Loesch, upon his death became a debt of his estate, but could only be made a lien on his real estate as provided in the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 15 (a), as amended by the Act of June 7, 1919, P. L. 412, sec. 1. The proceedings to make this debt a lien upon decedent's real estate is in the court of common pleas. The orphans' court has no jurisdiction for that purpose. See Conner's Estate, 302 Pa. 534. Nor does the fact that the payment of the amount specified in the antenuptial agreement is directed in testator's will, make it a lien or charge against his real estate, there being no provision therein so directing. See Cable's Appeal, 91 Pa. 327. This mat-

ter is not very important in this case, since, according to the testimony of one of the executors, and shown by the account filed, there are ample funds in decedent's personal estate for the payment of the amount provided for. The important question before the court is whether the petitioner is entitled to retain the said bonds and mortgages in addition to the payment provided for in the said agreement.

To determine this question it is necessary to take into consideration not only the terms of the agreement but all the surrounding facts and circumstances, including the subsequent transaction between the parties. The fact that the parties were well along in years and had accumulated separate estates of their own, that deceased had been married before and had children by that marriage are all circumstances to be taken into account: Krug's Estate, 196 Pa. 484; Neely's Appeal, 23 W. N. C. 336; Tiernan v. Binns et al., 92 Pa. 248, 253. The general rules governing the construction of contracts apply to antenuptial agreements: 30 C. J. 646, sec. 210; Shoch v. Shoch's Execs., 19 Pa. 252.

Under the terms of this agreement alone, the wife can take only the $15,000 therein provided for. It has been well said that it is a rule not only of law but of common sense not to attempt to construe that which needs no construction. The difficulty here is not as to the terms of the agreement but as to their application to the existing conditions and subsequent events.

In 30 C. J. 650, sec. 214, it is said:

"A marriage settlement will cover after-acquired property where it is apparent from the terms of the settlement that it was the manifest intention of the parties to include such property, and it is not necessary that the intention to apply the agreement to future acquired property should be expressly stated in the contract, where this intention may be gathered from the general tenor of the instrument."

In In re Hewett, 1 L. R., Ch. Div. 362 [1894], it is held

that a wife's joint interest in a personal estate created by an instrument subsequent to the marriage settlement is included. See 30 C. J. 650, note 41[a] (2).

Eugen Loesch died March 25, 1933, leaving a last will and testament dated June 17, 1925. On September 15, 1920, said decedent, being then 62 years of age and about to be married to Anna M. Reddinger, then 40 years of age, entered into an antenuptial agreement with her which was recorded the same day. The contracting parties were married October 2, 1920, and lived together as husband and wife until his death. No issue was born as a result of this marriage. Eugen Loesch had retired from business, had been married before, and had by the former marriage two sons and one daughter, residuary legatees under his will, all of whom survived him. Both decedent and petitioner had separate estates. Under the circumstances it was quite proper that they should enter into an agreement to fix their respective rights in their individual estates and thereby endeavor to prevent controversy concerning the distribution of their estates after the death of either. It cannot be doubted that a man and woman sui juris may make a valid antenuptial agreement as to the separate property of each which if fairly made without fraud or concealment the courts are bound to recognize and enforce. Having made such an agreement both are bound by it. Nothwithstanding such agreement either spouse may during his lifetime or by a last will and testament make additional provisions for or gifts to the other. In the absence of a valid agreement to the contrary, both husband and wife will take after the death of the other property standing in their joint names as husband and wife. But when there is a valid antenuptial agreement, its terms and the subsequent transactions between parties and all of the surrounding circumstances must be taken into consideration in determining whether the property passing from a deceased spouse to the survivor is intended as a fulfillment of the agreement or is an additional gift or provision for the other. And when,

after the death of one spouse, property is claimed by the survivor in excess of the amount provided for by the terms of the agreement the burden is upon the claimant to satisfy the court of his or her claim thereto and especially so when by a fair interpretation of the agreement the property given or transferred or made to secure such payment is in general conformity with the payment provided for in the antenuptial agreement. In the absence of the antenuptial agreement, petitioner as surviving widow of testator, would, on his death, take the title to any real estate or mortgages and their accompanying bonds standing in their joint names. As between husband and wife the law would raise a presumption that this was intended as a gift to the surviving widow. But the said agreement itself provides that her claim on his estate shall be limited to the $15,000 therein provided for. That the taking of title to the $18,000 in mortgages and bonds in their joint names was intended as a payment of, or as security for the payment of, the $15,000 specified in the agreement is entirely consistent with the terms of the antenuptial agreement especially in view of the depreciation in the value of said securities since the date of the agreement and the purchase of the several mortgages. The terms of the said agreement covering every possible right or claim of the petitioner in decedent's estate would seem to preclude the presumption which would otherwise arise that the taking of the titles to these bonds and mortgages in their joint names was intended as a gift. If this conclusion is correct then the presumption of a gift is overcome and before the widow can establish title to the said mortgages and their accompanying bonds she must assume the burden of showing by competent evidence that these were intended as a gift to her in addition to the $15,000 provided for in the said agreement.

The antenuptial agreement is as follows:

"Articles of Agreement, made and entered into this fifteenth day of September, 1920, between Eugen Loesch, of the city of Erie, county of Erie, and state of Pennsyl-

vania, of the first part; and Anna M. Reddinger of the same place, of the second part, as follows, to wit:

"WHEREAS, a marriage is intended shortly to be solemnized between the said Eugen Loesch, of the first part, and the said Anna M. Reddinger, of the second part;

"And, WHEREAS, each of the said parties owns and possesses a certain separate and several estate, in personal property or in real and personal property;

"And, WHEREAS, it is the will and design of the said parties that the intended marriage aforesaid shall in no way affect their relation as now existing with regard to their said separate and several estates;

"Now, therefore, it is hereby agreed by and between the parties to these presents, that from and after the solemnization of the marriage as aforesaid, the use, ownership, and control of all property, real, personal, and mixed of the parties hereto, shall continue and remain in each of them respectively in the same condition and under the same rights in the law as if the said Eugen Loesch and the said Anna M. Reddinger were sole and unmarried. The said Eugen Loesch, upon his part hereby relinquishes any and all right, claim and interest whatsoever in the separate estate of the said Anna M. Reddinger, to which he might in any manner, otherwise become entitled as husband of the said Anna M. Reddinger; but the said Anna M. Reddinger, upon her right shall receive from the said Eugen Loesch the sum of Fifteen Thousand (15,000) Dollars, in full of her share of said Eugen Loesch's estate, and upon the payment of which sum to the said Anna M. Reddinger, she relinquishes all right of dower, and all and any right, claim, and interest whatsoever in the separate estate of the said Eugen Loesch to which she might in any manner otherwise become entitled as wife of the said Eugen Loesch; and at the death of either of the said parties hereto, the separate property of him or her so dying shall descend to and vest in his or her heirs at law in like manner as if they had never been married, or in such person or persons, and for

such estate or estates as he or she so dying shall by his *of* her last will and testament, or writing in the nature thereof order and appoint.

"In witness whereof, the said *parries* have hereunto respectfully set their hands and seals the day and year above written.

(Signed). "EUGEN LOESCH (L. S.)
(Signed) "ANNA M. REDDINGER (L. S.)

"Witnesses:
(Signed) "A. B. KNOLL
(Signed) "JOHN B. EICHENLAUB"

By the terms of this agreement decedent waived all his rights to any claim and demand he might acquire in her estate by reason of the intended marriage, and provided that petitioner should receive out of his estate the sum of $15,000 which amount she agreed to accept in full payment and satisfaction of all rights and claims she might in any manner acquire in his estate by reason of the intended marriage. There is no allegation that there was any concealment or fraud in the execution of the said antenuptial agreement.

On July 17, 1926, decedent executed his last will and testament which provides, inter alia, as follows:

"First, I hereby order and direct that the sum of fifteen thousand dollars ($15,000.00), be paid to my wife, Anna M. Loesch, as stipulated and agreed upon by our Antinuptial Agreement. . . . I also give and bequeath unto my wife, said Anna M. Loesch, my automobile."

The will further provides:

"I give, devise and bequeath unto my children, Charles and Raymond Loesch and Emma Kelly, all the rest, residue, and remainder of my estate, real, personal and mixed, and any and all of my interest in any estate, real, personal and mixed, of whatsoever name, nature or description, each of my said children to have an undivided one-third thereof"; and also provides that the said children are to pay the rest of decedent's debts, funeral expenses, and the cost of the settlement of his estate.

Four of the bonds and mortgages above referred to, amounting to $13,000, were taken in the joint names of the decedent and the petitioner before the execution of the will, and the fifth bond and mortgage of a face value of $5,000 was taken after its execution. These bonds and mortgages remained in the custody and control of, and the interest was collected and kept by the decedent up to the time of his death. Sometime thereafter they were delivered to petitioner by the executors with the understanding that the title thereto would be passed upon by the court.

The inventory of decedent's personal estate, in addition to the bonds and mortgages above referred to, amounts to $49,059.69. Decedent's children are at least as great objects of his bounty as is the petitioner who was his second wife and who only entered the picture after his children were born and his estate accumulated. To allow her to retain the said bonds and mortgages amounting to $18,000, in addition to the $15,000 provided for in the antenuptial agreement, would be to give her a share in decedent's estate disproportionate and largely in excess of the amount his children would take, and this out of an estate which, in common with almost all other property, has no doubt greatly depreciated since the antenuptial agreement was entered into.

The husband could of course make a gift of the several bonds and mortgages to her. She now claims them as a gift. In view of the antenuptial agreement that places upon her the burden of showing such a gift. This burden she has wholly failed to meet. In Herr's Appeal, 5 W. & S. 494, it is held:

"Where a gift by a husband to his wife is reasonable and not in fraud of creditors, equity sustains it as a provision for her, to which the interposition of a trustee is not indispensable; but such gift must be established by clear and convincing proof, not only of the act of donation and delivery, but of her separate custody of it."

And in Shoch v. Shoch's Execs., 19 Pa. 252, at page 255, Mr. Justice Lewis says:

"There is nothing in the agreement which renders it void on account of its tendency to restrain marriage. We cannot close our eyes to the fact that its object was to promote a marriage, and we infer from the evidence that it was the means of accomplishing that desirable result. With this evidence of its wholesome tendency in this particular, we do not perceive the logical propriety of condemning it for an opposite one. And after the plaintiff has enjoyed all the advantages of the contract during her husband's life, and by virtue of its provisions has since his death resumed the possession of the personal property which belonged to her before marriage, and executed a release to her husband's executors of all claims except those held under the contract, there is a principle of natural justice which estops her from impeaching it. Honesty is always the best policy."

A surviving widow's rights to the widow's exemption in her deceased husband's estate and her right to succession by the entireties in properties held in their joint names both are incidents of the marital relation. It has been repeatedly held in Pennsylvania that a woman may by antenuptial or post nuptial agreements, by articles of separation or marriage settlement, bar her right to the widow's exemption. In Haendler's Estate, 81 Pa. Superior Ct. 168, 170-171, the court says:

"When a woman, about to marry, entered into an antenuptial contract, or a husband and wife, contemplating an immediate and continuous separation, entered into articles of separation, there being no fraud or imposition, under the provisions of which the wife relinquished all rights in the husband's estate, it was held that this included the widow's exemption, although not particularly mentioned: Tiernan v. Binns, 92 Pa. 248; Ludwig's Appeal, 101 Pa. 535; Dillinger's Appeal, 35 Pa. 357; Speidel's Appeal, 107 Pa. 19."

Although we have found no Pennsylvania cases con-

struing an agreement where after-acquired property taken in the joint names is involved, yet in our opinion the same rule would apply especially where the joint property is purchased wholly with the deceased husband's funds. It is so held in other jurisdictions. See Collins et al. v. Phillips et al., 259 Ill. 405, 102 N. E. 796, and Watson v. Stone et al., 68 Okla. 33, 171 Pac. 336.

It is true that the legal title to this property now stands in the petitioner, but a resulting trust is raised to his estate. In Miller et al. v. Baker, 160 Pa. 172, and 166 Pa. 414, it is held that where a farm is purchased by a husband with his wife's money, with the understanding that title was to be taken in her name but by a mistake the title was taken in the husband's name, which farm both continued to occupy, raised a resulting trust in favor of the wife. Of course the converse would follow the same rule.

"A resulting trust is one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title": Tolon et al. v. Johnson et ux., 104 Okla. 201, 230 Pac. 865.

"Resulting trusts, it has been said, are of two general types: (1) Those where a purchase has been made and the legal estate is conveyed or transferred to one party, but the purchase price is paid by another party. (2) Those where there is a gift by deed or will to a donee or grantee without pecuniary consideration coming from the grantee, but the intention appears from the instrument itself, that the legal and beneficial estates are to be separated and that the grantee or donee is either to enjoy no beneficial interest or only part of it": 65 C. J. 363.

In Ward v. Ward, 59 Conn. 188, 22 Atl. 149, a resulting trust was declared in favor of a sister against a brother where she had paid the purchase money and title was taken in their joint names. The court said:

"This result [a resulting trust] follows the natural presumption that a purchase will inure to him who furnishes the purchase price, and, of course, holds equally good when the title is taken to the purchaser and another jointly.

"There is an exception to this general rule, when the purchaser takes the conveyance in the name of his wife or child, or other person for whom he is under a natural, moral or legal obligation to provide. In such cases it is held that the transaction will be regarded, *prima facie*, as a settlement upon the nominal grantee. But if the nominal grantee be a brother or sister the law will presume a trust and not an advancement, on the ground that there is no such obligation to support that the purchase can be presumed to be made for that purpose."

In the instant case the legal obligation for the wife's support was satisfied by decedent during his lifetime and provided for after his death by the terms of the antenuptial agreement. Petitioner can therefore have no other right or claim upon the estate; neither the widow's claim for exemption: Hammer v. Freese, 19 Pa. 255; nor the right to claim title after his death to property taken in their joint names, nor any other property right growing out of the marriage relation, since all of these rights are taken away by the antenuptial agreement. She still had the right to be supported and maintained during the continuance of the marriage relation, since that right was not limited by the agreement, and this, it is admitted, she has received. Except as above set forth, the marriage itself only affected their social relationship, and not their property rights. She could have no right to succession in the joint property by reason of the marriage relationship since that right was taken away by the agreement. She admits that she invested no money in the said bonds and mortgages; that they were purchased wholly with his money; that he received the interest thereon and retained the possession of the said securities to the time of his death; and that she did not know that the title to said

property was taken in their joint names until after his death.

In our opinion, therefore, petitioner's claim must be limited to the $15,000 provided for in the antenuptial agreement in addition to the automobile specifically devised to her in the will.

### Decree

Now, to wit, July 31, 1935, it is ordered and decreed that upon an assignment by petitioner of the legal title in said bonds and mortgages to said decedent's estate, that the said sum of $15,000, with interest thereon from March 25, 1933, the date of decedent's death, be paid to petitioner at her option either in cash or in cash and securities to be appraised by three disinterested appraisers to be appointed by the court, or she may retain the said bonds and mortgages standing in her joint name with the decedent, said bonds and mortgages to be in like manner appraised and if found to be of less value then the said sum of $15,000, the balance to be paid to her in cash, and if the said bonds and mortgages shall be found to be of greater value than the said amount with interest as above set forth, the difference to be paid by her to the executors of the estate; said election to be exercised by petitioner within 15 days from this date.

From Otto Herbst, Erie.