## Rahe *versus* The Real Estate Savings Bank.

1. When an ante-nuptial agreement does not contain express words, bringing subsequently acquired property of either party *within* its operation, the widow has no life estate in such property of which the husband died seised.

2. To create estates in land in this mode, the implication must be very clear, plain and necessary to effectuate the manifest intent of the parties.

3. Undecided whether in searching a title it is necessary to look for antenuptial contracts which are recorded.

November 6th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1880, No. 89.

Ejectment by the Real Estate Savings Bank against Mary Elizabeth Rahe for a lot of ground in the city of Pittsburgh.

On the 30th of May 1854, Matthias Rahe and Mary E. Bushe executed a marriage settlement. On the next day they were married, and on the 27th of February 1856, the agreement was duly recorded in the recorder's office of Allegheny county. In 1859, Matthias Rahe purchased a house and lot in what is now known as the East End of Pittsburgh, and took title to it in his own name. He and his wife lived on the property from that year until March 7th 1878, when Mr. Rahe died, leaving his widow in possession. On the 13th of February 1873, Mr. Rahe executed and delivered to the Real Estate Savings Bank a mortgage for about $4000 on the property. He failed to pay it when due, and proceedings were commenced by the bank against him on the mortgage, judgment had, and the property sold, the bank becoming the purchaser. Possession of the premises was demanded of Mrs. Rahe, but she re-

fused to surrender them, and this action of ejectment was brought for their recovery.

The plaintiff at the trial having shown title to the premises in Mr. Rahe, gave in evidence the mortgage given by him, and the record of the proceedings on it, the judgment, the sale by the sheriff and his deed, and rested.

The defendant then gave in evidence the following marriage settlement, and proved that it had been duly recorded on the 27th of February 1856, three years before Mr. Rahe got title to the premises in dispute.

## MARRIAGE AGREEMENT.

MATTHIAS RAHE and MARY E. BUSCHE. } This agreement, made and concluded this thirtieth day of May, in the year of our Lord one thousand eight hundred and fifty-four, between Matthias Rahe, of the city of Pittsburgh, party of the first part, and Mary Elizabeth Busche, widow of Henry Busche, deceased, party of the second part, witnesseth that whereas a marriage is intended to be had and solemnized between the said Matthias and the said Mary Elizabeth, and both the said parties are possessed of certain property, that of the said Mary Elizabeth consisting of personal property, which will be, on her marriage, the one-third part of the estate of the said Henry Busche, deceased, and, whereas, both of the said parties are desirous of making a fair and equitable arrangement so that the greatest amount of good may be derived from the separate property of each of said parties, for their mutual benefit and advantage. Now, therefore, in order to effect the said intentions, and in consideration of the sum of five dollars to him in hand well and truly paid, the said Matthias, for himself, his heirs, executors, administrators, has agreed and by these presents does covenant and agree to and with the said Mary Elizabeth, her heirs, executors, administrators and assigns, to wit:

That all the goods, chattels and effects of the said Mary Elizabeth shall remain her own separate property after the solemnization of marriage as before, so that the same shall not be liable for the debts of said Matthias or in any manner subject to his control, and in case the said Mary Elizabeth shall survive the said Matthias, then that the said Mary Elizabeth shall, after the decease of said Matthias, for the full term and period of her natural life, have the full, free and exclusive possession, control, use and enjoyment of all her own property, as well as the property of the said Matthias of every species and description whatever, real, personal and mixed, and receive all the rents, issues and profits thereof; and the said Mary Elizabeth, for herself, her heirs, executors, administrators and assigns, has agreed, and by these presents does covenant and agree to and with the said Matthias, his heirs, executors, administrators and assigns, that she will well and truly pay or cause to be paid and per-

15 NORRIS—9

mit the said Matthias to receive the interest and profits which shall arise and accrue from the money and personal estate of the said Mary Elizabeth for the mutual support of the said parties, during their joint lives ; and in case the said Matthias shall survive the said Mary Elizabeth, then, that the said Matthias shall be entitled to the whole of the personal or other property of the said Mary Elizabeth, as absolute owner thereof.

It is the further agreement of the said parties that in case the said Mary Elizabeth shall survive the said Matthias, and issue shall have been born of the body of said Mary Elizabeth to the said Matthias, which, or some of which, issue shall be living at the time of the decease of said Mary Elizabeth, then the said issue, or surviving portion thereof, shall take the whole of the separate property of the said Mary Elizabeth, to the exclusion of all other persons whatsoever, and the estate of said Matthias shall be divided among all his heirs share and share alike.    But if in the event aforesaid, that the said Mary Elizabeth shall survive the said Matthias, and no issue shall have been born of the body of the said Mary Elizabeth to the said Matthias, or all the said issue shall have become extinct by death, at the time of the decease of the said Mary Elizabeth, then the separate property of the said Mary Elizabeth shall remain her own absolutely to dispose of by her last will and testament, or otherwise as she may see proper.    It is likewise the further agreement of said parties, that in the said event of the said Mary Elizabeth surviving the said Matthias, the said Mary Elizabeth shall again contract marriage, then from the period of said marriage, and thereafter, the said Mary Elizabeth shall be entitled to have no more or other right or interest in the estate of said Matthias than she shall be entitled to have under the existing laws of this Commonwealth ; and the residue of the estate of the said Matthias shall immediately pass to his heirs, or their legal representatives, according to law.    It is the further agreement of said parties that said Mary Elizabeth may from time to time invest such portion of her capital as she may deem proper, and on such good security as may be deemed satisfactory ; and if the said Mary Elizabeth shall at any time lend her said capital or any part thereof to the said Matthias, then the said Matthias shall give to the said Mary Elizabeth, or to such person as she may designate in trust for her, subject to all the provisions hereinbefore contained, such good and satisfactory security as is ordinarily given for the repayment of money lent.

In witness whereof we have hereunto set our hands and seals this 30th day of May 1854.

MATTHIAS RAHE.    [L.S.]

MARY ELIZABETH BUSCHE.    [L.S.]

Sealed and delivered in the presence of
GEO. WATSON.
JOHN J. MITCHELL.

[Rahe v. Real Estate Savings Bank.]

Under and by virtue of the terms of this settlement it was claimed by the defendant that as she had not joined in the mortgage she had a life estate in the premises and was entitled to a verdict.

The court, White, A. L. J., in charging the jury, inter alia, said:

"While the settlement may have been binding as to creditors upon all real estate owned at the time it was given or recorded, I think it does not apply to subsequently acquired property, so as to cut out creditors who gave credit on the faith of that property.

"When the bank, in 1873, loaned the husband money and obtained a mortgage, they were bound to look into the title, and tracing it back they found he acquired it in 1859. They were not bound it go years beyond that to see if he had made any arrangements with any person by which at his death that person was to have an interest in the property. Any deed or conveyance on record prior to the time that he acquired the title to the lot would not be notice to the creditors in reference to subsequently acquired property. I, therefore, say to you that the settlement, while it may be good between the wife and her husband, would not defeat the right of the bank to recover on their mortgage, to sell on their mortgage and acquire title without actual notice of the marriage settlement, and there is no evidence of that in this case. * * * Under these instructions your verdict should be for the plaintiff with six and one fourth cents·damages and costs."

Verdict for plaintiff accordingly when defendant took this writ and alleged that the court erred in the portion of the charge above quoted.

*Hampton & Dalzell,* for plaintiff in error.—It is competent for parties contemplating marriage, not only to settle their property for special purposes, but to create estates upon contingencies as to real property then owned, or that they may afterwards acquire. This right cannot be questioned, and as a necessary result the estate so created will be protected, if the instrument bringing it into being be duly executed, acknowledged and recorded. The language of the Act of March 18th 1775, as to what instruments may be recorded, is very explicit. It directs the recording of "all deeds and conveyances which, from and after the publication thereof, shall be made and executed within this province or concerning any lands, tenements or hereditaments in this province, or whereby the same may be any way affected in law or equity." KENNEDY, J., in Hellman v. Hellman, 4 Rawle 445, construing this act and that of 1715, says: "From these acts of the legislature, taken collectively, I think it is pretty evident that the 'deeds and conveyances, or writings' therein mentioned and authorized to be recorded must be understood to mean such as pass or create an interest or right of

[Rahe *v.* Real Estate Savings Bank.]

some kind in land, unless, indeed, it be mortgages, which are expressly mentioned in other parts of the Act of 1715."

That a life estate, such as was explicitly created by this marriage settlement, was an interest in land, is too plain for argument. In 1859, when Mr. Rahe bought the land in dispute, the settlement became operative as to it, and Mrs. Rahe by force of its terms was seised of an estate in it, to be defeated only in case she died before her husband. Whether her interest be called an equitable one, or a defeasible estate, it is certain the settlement gave her, in the language of Judge KENNEDY, "an interest or a right of some kind in land" the very moment Mr. Rahe took title, for there was then of record the writing duly recorded which created the estate. If this position be correct, it must inevitably follow as a conclusion that notice of it, by reason of the writing creating it being recorded in conformity to the Act of 1775, was given to the bank when the mortgage was taken.

*John A. Wilson,* for defendant in error.——In the great number of decisions on ante-nuptial settlements there is in none of them any attempt to consider any other real estate affected than that mentioned therein, and that was always some estate or an expectancy had in the same at the date of the marriage. None as to future acquisitions of real estate by the husband.

We admit that as to any real estate or property the said Matthias Rahe owned at the time of marriage, June 1st 1854, and not encumbered by him between say December 1st 1854 and February 27th 1856, the time of the recording of said articles, or "settlement," that the recording of said settlement as to such real estate would give to all subsequent creditors or mortgagees notice of the wife's interest therein. But that the recording of them then was any notice to his creditors or mortgagees as against any real estate acquired by him subsequent thereto (even if so intended by the said settlement), we utterly deny. At the time of the record aforesaid both he and she were strangers to the real estate in this suit and had no shadow of interest or title in the same whatever. We were bound to search the records back to the time Mr. Rahe got title to same, *i. e.*, to, say, January 1st 1859, but no farther. We found no conveyance of his real estate to that period, and back of that the husband was a stranger to it, and the widow claiming now through him, of course, was also a stranger to it; Keller et al. *v.* Nutz et al., 5 S. & R. 254.

Mr. Justice GREEN delivered the opinion of the Court, November 22d 1880.

In the year 1859 Matthias Rahe purchased a house and lot in the east end of Pittsburgh and took title to it·in his own name. On the 13th of February 1873 Mr. Rahe executed and delivered to

the Real Estate Savings Bank a mortgage on this property to secure the payment of $4000. He failed to pay the mortgage at maturity and thereupon a sci. fa. was issued on the mortgage, judgment obtained, execution issued, and the property was sold by the sheriff and purchased by the bank. Matthias Rahe and his wife Mary lived on the premises until his death on March 7th 1878. The bank gave notice to Mrs. Rahe, after their purchase, to give up possession of the property, but she refused to do so, and thereupon the present action of ejectment was brought to recover possession. The defence set up by Mrs. Rahe was that she had a life estate in the premises by virtue of an ante-nuptial agreement between her husband and herself, made on the 30th day of May 1854, the day before their marriage, and that as she had not joined in the mortgage to the bank she was entitled to hold possession of the property during her life. The court below was of opinion that this defence was not available because the property in question was acquired after the marriage of the parties, and was not subject to the operation of the marriage articles, and also because the bank had no notice of the existence of the articles, and was not bound by the record of them made several years before Matthias Rahe acquired title to the property in question. In the view which we take of the case, the determination of the latter question becomes unnecessary, and we therefore confine our attention to the interpretation of the ante-nuptial agreement. We are of the opinion that it does not embrace after-acquired property, and therefore it was not necessary for the wife to join in the execution of the mortgage in order to pass a complete title to the bank. The agreement is entirely devoid of any *express* words, bringing subsequently-acquired property of either party within its operation. Now the proposition of Mrs. Rahe is that she became the absolute owner of an estate for life in land by force of this agreement. Admittedly there are no words conferring such an estate to be found in the instrument. It is plain then that if the estate exists at all it must be by virtue of a necessary implication from the language of the agreement.

It is equally plain that to create estates in land in this mode, the implication must be very clear, plain and necessary to effectuate the manifest intent of the parties. We have examined this instrument very carefully with a view to determine whether we can give it such an interpretation, and we are constrained to say that we can find no language in it which will permit us to reach such a conclusion. It commences by reciting " that whereas a marriage is intended to be had and solemnized between the said Matthias and the said Mary Elizabeth, and both the said parties are possessed of certain property, that of the said Mary Elizabeth consisting of personal property, which will be on her marriage the one-third part. of the estate of the said Henry Busche, deceased, and whereas, both of the said parties are desirous of making a fair and equitable

arrangement so that the greatest amount of good may be derived from the separate property of each of said parties for their mutual benefit and advantages." It then proceeds to express the agreement of Matthias as follows, viz. : " That all the goods, chattels and effects of the said Mary Elizabeth shall remain her own separate property after the solemnization of marriage as before so that the same shall not be liable for the debts of the said Matthias or in any manner subject to his control, and in case the said Mary Elizabeth shall survive the said Matthias then that the said Mary Elizabeth shall after the decease of the said Matthias for the full term and period of her natural life have the full, free and exclusive possession and control, use and enjoyment of all her own property, as well as the property of the said Matthias of every species and description whatever, real, personal and mixed, and receive all the rents, issues and profits thereof." In the next clause Mary agrees that "she will well and truly pay or cause to be paid, and permit the said Matthias to receive the interest and profits which shall arise and accrue from the money and personal estate of the said Mary Elizabeth for the mutual support of the said parties during their joint lives ; and in case the said Matthias shall survive the said Mary Elizabeth then that the said Matthias shall be entitled to the whole of the personal or other property of the said Mary Elizabeth, as absolute owner thereof." It is manifest that the subject-matter of the agreement was the property which the parties respectively owned on the day the agreement was made. It is expressly so described in the recital with which the instrument commences.

There the agreement is that the property of " the said Mary Elizabeth *shall remain* her own separate property" after the marriage, " so that *the same* shall not be liable for the debts of the said Matthias." It is too plain for argument that up to this point the agreement is expressly limited to the property which each possessed before the marriage. It is very certain that no property of Mary Elizabeth could *remain* hers after the marriage except what was hers before the marriage, and it is the *same* property which is not to be subject to the husband's debts. Then immediately following this, and without a single word making any change in the subject-matter, the agreement provides that if the wife shall survive the husband she shall have the full possession, control, use and enjoyment of " all her own property" as well as all of her husband's, during her life. These are the words which confer upon her whatever interest she has in her husband's estate under the agreement. To read them as she now claims, we would have to hold that while she was giving to her husband only the property which she owned at the time of the marriage, he was giving to her not only all that he owned prior to the marriage but also and in addition to that, all that he might ever acquire at any time after the

[Rahe v. Real Estate Savings Bank.]

marriage and up to the time of his death; and that too without any words to that effect, or any words introducing a new subject-matter or in any way changing the description of the property about which they were bargaining. It is true the language describing the property of Matthias is apparently broad, and includes all, of every kind, real, personal and mixed, but the inquiry remains, as of what time this generality of description is predicated. As of the time of his death? So says the widow now, but the agreement says nothing of the kind. If we refer to that, we find that this descriptive language is used in immediate connection with the words " as well as the property of the said Matthias." What property? Manifestly his property already referred to, to wit: property which he owned at the time of the marriage. To divert these words from their plain and necessary meaning, would require clear and indubitable language to that effect, but there is no such language. The remaining portions of the agreement contain no words changing in any manner the subject-matter of the contract, but they rather accord with the interpretation we have already given.

Provision is made for the disposition of the property of the wife in certain contingencies, but it is uniformly spoken of as " the separate property of the said Mary Elizabeth," and is evidently regarded as the same property which was mentioned in the first clause of the agreement.

For these reasons we think the court below gave a correct construction of the agreement in question, and were right in directing the jury to find a verdict in favor of the plaintiff.

Judgment affirmed.

Justices MERCUR and GORDON dissented from this opinion in so far as it declares the agreement does not, as between the parties thereto, apply to property afterwards acquired by Rahe and owned by him when the agreement took effect; but this being the case of a creditor, they concur in the judgment.