101   535
19 SC ²341
101   535
210   432

## Ludwig's Appeal.

A wealthy widower, fifty-seven years of age, and a poor widow of sixty-three years, being about to marry, executed an ante-nuptial contract, whereby the latter, in consideration of "one dollar, and of a comfortable support during life and at her death a decent Christian burial," relinquished all her rights in the former's estate. The agreement recited that the intended husband owned "certain lands and tenements, also personal property;" the person who drew the document explained its effect to the woman before execution, and stated that the intended husband "had a large property," but the extent or value thereof was not made known to her. It in fact amounted to over $14,000. On the death of the husband, fourteen years after the marriage, his widow claimed and was allowed $300 of his personal estate, contrary to the provisions of the ante-nuptial settlement.

*Held*, that the circumstances indicated the absence of any fraudulent concealment on the part of the intended husband in procuring the execution of the ante-nuptial settlement by his intended wife; that it was founded on sufficient consideration, and that it was therefore error to sustain the widow's claim in opposition to its terms.

*Held, further*, that even if the circumstances were such as to cast the burden of proof on the personal representatives of the husband to show fairness in the transaction, such burden had in this case been fully met.

November 27th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Mercer county:* Of July Term 1882, No. 47.

This was an appeal, by Ephraim Ludwig, a son of Abraham Ludwig, deceased, from a decree of said court dismissing his exceptions to an appraisement of $300 worth of personal property of the decedent, and the setting apart the same for the use of Eva Ludwig, decedent's widow.

Abraham Ludwig died intestate November 25th 1881, seised and possessed of real and personal estate valued at over $28,000, leaving to survive him a widow, Eva Ludwig, and eleven children by a former wife, including the appellant. Letters of administration were granted on his estate, to Francis Ludwig, who, in January 1882, at the request of the widow, appointed appraisers, who appraised and set apart $300 worth of personal property for the widow.

Ephraim Ludwig, and others of the children of the decedent, filed exceptions to said appraisement, on the ground that by an ante-nuptial agreement the widow was not entitled to said property.

Depositions were taken, which showed the following facts: In the year 1867, Abraham Ludwig, being fifty-seven years of

age, a widower, and the father of eleven adult children, proposed marriage to Mrs. Eva Rickert, a widow of sixty-three years of age, and thereupon the following ante-nuptial contract was executed by himself and Mrs.Rickert viz :

. " Article of agreement, made this first day of July, 1867, between Abraham Ludwig, of West Salem township, Mercer county, and State of Pennsylvania, of the first part, and Eva Rickert, of Hempfield township, same county and State, of the second part, as follows, to wit :

." Whereas, the said Abraham Ludwig is seised of certain lands and tenements situated in said county of Mercer, also personal property in said county ; and, whereas a marriage is shortly intended to be had and solemnized between the said Abraham Ludwig and said Eva Rickert, it is therefore covenanted and agreed by and between the said parties to these presents in manner and form following: That the said Abraham Ludwig, for himself, his heirs, executors and administrators, doth covenant and agree to and with the said Eva Rickert, her executors and administrators, in case the said intended marriage shall be had and solemnized that he, the said Abraham Ludwig, will give and furnish the said Eva Rickert a good and comfortable support in health and in sickness for and during her life, and at her death furnish her with a decent and Christian burial. And the said Eva Rickert, for herself, her heirs, executors and administrators, agrees to and with the said Abraham Ludwig, his executors and administrators, and does, in case said intended marriage shall be had and solemnized, hereby for and in consideration of the covenant and agreement aforesaid, as of the further sum of one dollar to her in hand paid by the said Abraham Ludwig, hath granted, remised and released, and forever quit claimed, and by these presents doth fully and absolutely grant, remise, release and forever quit claim all dower, and thirds, and right and title of dower and thirds, and all the right, title, interest, claim and demand whatsoever in law or equity of her, the said Eva Rickert, that she may acquire in the real and personal estate of the said Abraham Ludwig, in case the said intended marriage shall be had and solemnized, so that neither she, the said Eva Rickert, her heirs, executors or administrators, nor any other person or persons for them, or any of them, shall have, claim, challenge or demand, or pretend to have claim, challenge or demand any dower or thirds, or any other right, title, claim or demand of, into, or to the said real or personal estate of the said Abraham Ludwig, but thereof and therefrom shall be utterly debarred and excluded forever by these presents.

."In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"Sealed and signed in the ⎱　　ABRAHAM LUDWIG, [Seal]
　　presence of　　　　　 ⎰ 　　　　her
WM. MAXWELL. 　　　　　 　: EVA ✕ RICKERT, [Seal]."
　　　　　　　　　　　　　　　　　　mark

Acknowledged same day before Wm. Buck.

(Recorded 8th day of Dec. 1881, in Article Book "H," page 236.)

·The intended marriage was solemnized three days after the date of the above contract. At this time Mr. Ludwig's real and personal estate exceeded in value $14,000.

The contract was drawn by Judge William Maxwell, who testified that the parties were present when he; wrote it; that he read it to them before it was executed, and said to Mrs. Rickert: "Now, if you sign this, you get nothing from Mr. Ludwig's estate except your keeping and your decent Christian burial. I want you to understand what you are doing, for Mr. Ludwig has a large property—how much I don't know—but whatever it is, you will have no interest in it at his death—that is what the paper says. She replied to me, that 'she understood it.'" The paper was then executed, and acknowledged before Esquire Buck. It was left in Judge Maxwell's possession, and was not recorded until after Mr. Ludwig's death.

It was admitted : that from the time of their marriage in 1867 until Mr. Ludwig's death in 1881, he acted as a kind and affectionate husband, providing for all her wants. At Mr. Ludwig's death his children arranged for her to continue to live in the same house, and provided sustenance and attendance for her. After remaining there about two months, she left the ·place—as she testified "because she did not want to stay there"—and went to live with her son-in-law, and requested the appraisement to be made in her favor.

On behalf of Mrs. Ludwig, witnesses testified that in 1867 she had no education in the English language, and could not read or write, and that she could only have understood the effect of the contract, in case it had been very fully explained to her; she could understand and speak English in ordinary conversation. There was no evidence that the amount of Mr. Ludwig's property was made known to her, prior to her executing the contract, other than the testimony of Judge Maxwell, above quoted. There was no evidence that at that time Mrs. Rickert had any property, or any means of support.

Upon the foregoing facts the court entered a decree overruling the exceptions, and confirming the appraisement, McDERMITT, P. J., filing an opinion in which he said, inter alia :

·"To call a contract between betrothed husband and wife, where his financial circumstances are not shown to have been

fully explained to her, and which only gives her, as his widow, one dollar in lieu of her interest in his estate under the intestate laws, an 'ante-nuptial settlement' is a travesty on that legal term. In my opinion the provision secured to the wife by this so-called marriage settlement was manifestly unreasonable and disproportionate to the means of the intended husband, and it therefore raises a presumption of intended concealment and throws upon them (the exceptants) the burden of disproving that presumption. And when such presumption so arises, we cannot, in the absence of satisfactory evidence showing that the decedent made a full statement to her of all the property he owned or the sum he was worth, presume, she would have accepted one dollar in addition to a good and comfortable support in health and in sickness for and during her life and at her death a Christian funeral, had she been fully and truthfully informed as to his circumstances.

"The exceptants are invoking the aid of a court of equity to enforce the specific performance of this marriage settlement, but as he under whom they claim to have this done did not himself do equity to his intended and betrothed wife, such specific performance will not be decreed."

Ephraim Ludwig thereupon took this appeal, assigning for error, inter alia, the portion of the opinion of the court above quoted, and the decree confirming the appraisement.

*Mason* (with him *Zeigler & Bowser*), for the appellant.

*Stranahan* (*Mehard* with him), for the appellee.

Mr. Justice PAXSON delivered the opinion of the court, December 30th 1882.

It was decided in Tiernan *v.* Binns, 11 Norris 248, that where a woman about to marry relinquishes by an ante-nuptial contract, all right of dower, and all interest of any kind whatever to which she might be entitled in the estate of her intended husband by reason of her marriage, she waives her right to $300 of her husband's estate under the Act of April 14th 1851.

It was contended, however, that this case does not come within the rule of Tiernan *v.* Binns for the reason that the ante-nuptial contract was a fraud upon the wife; that the provision contained therein for the latter was inadequate, and disproportioned to the means of her husband; and that the case comes within the rule laid down in Kline's Estate, 14 P. F. S. 122, where it was said that "while it might not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife was unreasonably disproportionate to the means of the

intended husband, it raised the presumption of designed conceal-
ment and threw upon him the burden of proof." Kline's
Estate was well decided. It was recognized in Tiernan v.
Binns, and we have no disposition to depart from it. But we
are unable to see its application to the present case. It must
be remembered that in Kline's Estate the auditor found the
fact that the wife had not only signed the ante-nuptial contract
in ignorance of her rights, but that the extent of her husband's
property had been concealed from her at the time of the exe-
cution of the contract. How stand the facts here? Abraham
Ludwig was fifty-seven years of age, a widower with eleven
children, when he entered into this ante-nuptial contract with
Mrs. Eva Rickert, the appellee. The latter was at that time a
destitute widow, sixty-three years of age. Abraham was then
possessed of real and personal estate worth about $14,000. The
contract itself recites the fact that "the said Abraham Ludwig
is seised of lands and tenements situate in said county of Mercer;
also certain personal property in said county;" and then provides
that the said Abraham, and his heirs, executors and adminis-
trators, shall " give and furnish the said Eva Rickert a good and
comfortable support in health and in sickness for and during
her life, and at her death furnish her with a decent and
Christian burial." This, with the nominal sum of one dollar,
is all the benefit Mrs. Rickert took under the contract.

The consideration is ample to sustain the contract if it is
free from fraud or concealment. Upon this point we have the
uncontradicted testimony of Judge Maxwell who drew the
paper. He says: "I wrote this ante-nuptial contract. My re-
collection is, the parties and myself were alone in the office at
the time this contract was written. I read it to the parties be-
fore it was executed. After I read this article I turned to Mrs.
Rickert and said to her: 'Now, Mrs. Rickert, if you sign this
you get nothing from Mr. Ludwig's estate except your keeping
and your decent Christian burial.' I said further, 'I want you
to understand what you are doing; for Mr. Ludwig has a large
property ; how much I don't know, but whatever it is you will
have no interest in it at his death—that is what the paper says.'
She replied to me that she understood it."

The widow was examined without objection on her own be-
half, but she does not say that she did not understand the paper,
or that she was deceived or misled as to the extent of her hus-
band's estate. Nor does she make any complaint of ill treatment
by the children after her husband's death. She moved away
from her home because her son-in-law desired her to live with
him.

There is not a scintilla of evidence to bring this case within
the doctrine of Kline's Estate. If we regard the provision for

[Kightlinger's Appeal.]

the widow as inadequate it merely throws the burden of proof upon her husband's representatives, and it has been fully met. From a sentimental standpoint the provision for the wife would not seem to be generous. But a widower of fifty-seven with eleven children, seldom contracts a second marriage from mere sentiment. He may have thought it was enough, in view of her age and position, to give her a comfortable home, a decent support during her life and a Christian burial after her death. At any rate it is very clear she was of that opinion, and that is an end of the case.

It would have been wiser to have fixed a sum certain for the support of the widow. The failure to do so, however, does not take away the consideration of the contract. The estate is bound for her support, and in case of disagreement about details or amount, the Orphans' Court has ample power in the premises.

All of the assignments except the last are to errors in the opinion of the court. They need not be discussed for obvious reasons. The last assignment is to the confirmation of the appraisement of the property set apart for the widow under the Act of Assembly. This assignment is sustained.

>Decree reversed at the costs of the appellee, and
>it is ordered that the record be remitted for
>further proceedings.