# Birkbeck's Estate.

*Husband and wife—Ante-nuptial agreement—Contract.*

A man sixty-four years of age and a woman fifty-one years of age entered into an ante-nuptial agreement by which each released all claim on the other's estate, except "only as to any testamentary provision that may be hereafter made by one in favor of the other." The wife had no estate of her own, and she knew that her husband was in comfortable circumstances. She did not know the amount of his estate which at the time of the marriage was $193,000. A few days before his death the husband made his will leaving his wife $100,000 and legacies to other persons amounting together with the wife's legacy to $132,000. The estate proving larger than the husband supposed, there was found to be after his death an intestacy as to $60,000, as to which the widow claimed her widow's portion. *Held*, (1) that no fraud or concealment had been committed by the husband in connection with the ante-nuptial contract; (2) that the fact that the husband underestimated his fortune afforded no reason for disregarding the agreement; (3) that the widow's claim was properly disallowed.

Argued April 9, 1906.   Appeal, No. 219, Jan. T., 1905, by Mary Birkbeck, from decree of O. C. Luzerne Co., No. 468 of 1900, dismissing exceptions to adjudication in Estate of Joseph Birkbeck, deceased.   Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Exceptions to adjudication.

FREAS, P. J., found the facts to be as follows:

Joseph Birkbeck died testate November 14, 1900.   He left a widow, Mary Birkbeck, the claimant, no children, and numerous collateral heirs.   By his will, written four days before his death, he made this bequest to his widow: " It is my desire that my wife, Mary Birkbeck, shall inherit the sum of ($100,000), one hundred thousand dollars, the proceeds of stocks or bonds, or equal to that amount, it is my desire the same shall be given to Eleanor Annie Wadsworth, at the death of Mary Birkbeck."   The will also contains this clause: " All real estate shall be converted into cash, with the exception of the property at the corner of Dana and Grove Streets, which shall be held in reserve for my widow, together with all household utensils, except the piano and music, which I desire to be set apart for my step-daughter for her sole and separate use."   He also gave to the said Eleanor Annie Wadsworth, who is the daughter of his wife by a previous husband, $5,000.   To his nephews and nieces, twenty-two in number, he gave $500 each, and a few other small bequests.   All the bequests amount to $132,668.12, with interest, and less collateral inheritance tax.   His personal property was inventoried after his death at $254,661.45, and he therefore died intestate as to the difference.   His real estate, including that specifically devised, was worth about $30,000.   After the payment of all the legacies there will remain for distribution under the intestate laws, in this audit alone, $60,193, and of this sum the widow claims a widow's portion, or one-half, or the sum of $30,096.50.

To defeat this claim the heirs set up an alleged ante nuptial contract entered into between the widow and decedent, bearing date February 21, 1895; which was acknowledged at the time of signing before J. N. Davidson, a notary public, and witnessed by him, and which was recorded in the recorder's office

of this county, April 22, 1895. This agreement, under seal, is formally drawn and in it, inter alia, the decedent releases all claim to her estate and she releases any interest she may have in his estate, either as his wife by dower, exemption or otherwise, saving only such testamentary provision as he should thereafter make in her behalf.

\*      \*      \*      \*      \*      \*      \*      \*

At about the time the contract was entered into decedent was sixty-four years old and was worth about $193,000. Claimant was fifty-one years old; had been previously married; had traveled extensively, was intelligent and in every way qualified to protect her interests. She possessed no means of her own and had been acting as his housekeeper for several years. She alleges that on the day the contract was signed decedent called her in from the kitchen and asked her to sign the paper, and she signed it; only the bottom part was left unfolded; that there was a man present who took her acknowledgment; the paper was not read or explained to her, and she did not read it nor did she ask about it, and did not know what it was about until after the decedent's death. He made no disclosure of his worth to her, but she knew he was in comfortable circumstances. Shortly before his death he told her if his relatives made any trouble for her she should upset his will and claim a wife's portion. As it turned out, his last will was contested by his relatives and was defended by his widow, who accepted the legacy therein given, and now occupies the house which he directed should be held in reserve for her, worth about $6,000, and which acceptance was after full knowledge of the terms of the contract. If we believe her testimony we must conclude that the decedent by a trick obtained her signature to a contract which she would not have willingly signed, and that the notary was a party to it. In other words, after the death of the other party to a solemn contract under seal, and of the only witness to it, we are asked to accept the testimony of the survivor that her signature was obtained by fraud. She was under no duress, and could read and write, and the law presumes that under such circumstances persons who sign papers do so with a full knowledge of their contents; otherwise most contracts would not be worth the paper they are written on. The decedent in this case might have kept the contract among his

private papers, but instead he recorded it in the recorder's office, which is to our mind strong proof that no concealment was practiced, and we so find: Smith's Appeal, 115 Pa. 319.

\*     \*     \*     \*     \*     \*     \*     \*

Under all the circumstances in this case there can be no doubt that the provision made by testator for his widow is reasonable, even generous, and ample for her maintenance, and considering her previous estate she is most fortunate indeed. Her claim to a share of decedent's estate under the intestate laws is not allowed.

*Error assigned* was the decree of court.

*Henry A. Fuller*, for appellant.

*H. W. Palmer*, with him *C. O. Stroh* and *J. T. Lenahan*, for appellees.

PER CURIAM, May 14, 1906:

The parties, husband and wife, by ante-nuptial contract released all claim on each other's estate except " only as to any testamentary provision that may be hereafter made by one in favor of the other." Both were elderly people, and appellant had been married before. It was found by the court below that the agreement was in fact fairly and openly made, and though the husband's exact means were not stated appellant knew " he was in comfortable circumstances." She had no estate of her own, and from a pecuniary point of view the marriage was altogether favorable to her. Under the circumstances no presumption of fraud or concealment ever arose.

Even looking at the agreement in its most extreme aspect in appellant's favor as an agreement for such a share of his estate as in good faith he should provide for her, the obligation was fully met. At the time of marriage he was worth about $193,000, and he left his widow more than half of that amount. His estate turned out to be somewhat larger than he himself appears to have estimated, so that in fact there was an intestacy as to part of it. But this subsequent result af-

fords no reason for disregarding an agreement which on the facts as they existed at the time of making was carried out by the husband, not only justly but generously.

Decree affirmed with costs.