Opinion bx
 

 Keller, P. J.,
 

 On February 5, 1918, Fred C. Goeckel and Caroline Gebhardt, in contemplation of a marriage between them, executed under seal and acknowledged an antenuptial agreement, which became effective on their marriage, shortly thereafter. Mr. Goeckel died on February 23, 1936, intestate, leaving to survive him his said widow, and five children by a former marriage, to one of whom, Stanley A. Goeckel, letters of administration on his estate were granted on October 17, 1936.
 

 The said antenuptial agreement set forth that Frederick C. Goeckel was seized of certain lands and tenements situated in Luzerne County and also personal property, and that a marriage between him and Caroline Gebhardt was intended to be solemnized. In consideration thereof the said Frederick C. Goeckel, for himself, his heirs, executors and administrators, cov
 
 *38
 
 enanted and agreed with the said Caroline Gebhardt, in case said intended marriage was solemnized, “that he, the said Frederick C. Goeckel, will give and furnish the said Caroline Gebhardt, a good and comfortable support in health and sickness, for and during her life, and shall at her death furnish her with a decent and Christian burial.” And the said Caroline Gebhardt, in consideration of said covenant and agreement, agreed, in case said intended marriage was solemnized, to remise, release and forever quit claim, and therein formally did remise, release and quit claim “all dower and thirds, and right and title of dower and thirds, and all right, title, interest, claim and demand whatsoever in law or equity, of her, the said Caroline Gebhardt, that she may acquire in the real and personal estate of the said Frederick C. Goeckel, in case the said intended marriage shall be had and solemnized.”
 

 Neither of the parties, during their marriage, took any steps to revoke 'or rescind this antenuptial agreement, and the widow, since Mr. Goeckel’s death, has made no claim that it should be set aside as in fraud of her rights. On the contrary, ten days after Mr. Goeckel’s death she had the agreement recorded in the office of the Recorder of Deeds of Luzerne County (Deed Book No. 753, p. 248), and on December 4, 1936 presented a petition to the Orphans’ Court of Luzerne County for a citation on, the administrator to show cause why he should not pay to her for her support the sum of $65 per month, from the date of her husband’s death, during her lifetime, thus affirming the force and validity of said agreement. She did not, however, bring an action in the court of common pleas upon said agreement or file a copy or particular written statement thereof in the office of the prothonotary of Luzerne County, and have it indexed against the decedent and the administrator, as a lien, in the judgment index of Luzerne County, as provided by Section 15 of the Fidu
 
 *39
 
 ciaries Act of June
 
 7,
 
 1917, P. L. 447, pp. 476-479. The court, on August 26, 1937, following an answer by the administrator and a hearing at which Mrs. Goeckel gave testimony as to the value of the real and personal estate left by her husband and the amount necessary for her comfortable support, filed an opinion finding that the widow, Caroline Goeckel, is entitled to receive from the decedent’s estate the sum of $65 per month, for her proper and comfortable maintenance and support; and on September 27, 1937 ordered and decreed that the administrator pay to the widow, for her comfortable support, “the sum of $65 for each and every month since the date of the death of the said Fred C. Goeckel on February 23, 1936, and to continue paying to her the said amount monthly during her lifetime, support from February 23,1936 to August 23, 1937, to be paid to her within sixty days from the date hereof and support at the said rate of $65 per month during her lifetime, from August 23, 1937, to be paid to her by the said Administrator on or before the 23d day of each and every month thereafter.” The administrator appealed.
 

 It does not appear from the record before us that the administrator filed an inventory and appraisement of the goods and chattels of the said decedent, or that he filed an account of his administration of said estate. The appraisement filed by the appraiser for inheritance tax purposes showed personal property of $502.71 and real estate valued at $8,900, or a total estate, real and personal, of $9,402.71, against which allowances of $5,115.93,
 
 [1]
 
 by way of funeral expenses, hospital expenses, doctor’s and nurse’s bills, taxes and expenses in settlement of estate, etc., were made, leaving a net estate — including realty and personalty — of $4,286.73, on which a net tax of $81.50 was assessed and paid.
 

 
 *40
 
 By the terms of the antenuptial contract, Mrs. Goeckel released and relinquished all her right, title and interest, as widow, in the real and personal estate of her husband, but, as respects the provisions made for her in the antenuptial agreement she became a creditor,
 
 (Bannan’s App.,
 
 1 Walker 1, 4;
 
 Coane’s Est.,
 
 310 Pa. 138, 139, 165 A. 2), with the rights of a creditor, superior to the estate by descent of the heirs and next of kin entitled to share in his estate, real and personal, under the intestate laws. Her claim as a creditor was “equal to that of any other creditor”;
 
 Jones’s Appeal,
 
 62 Pa. 324, 325. This expression of the eminent Judge Pearson of the Orphans’ Court of Dauphin County, was approved by the Supreme Court, (p. 327, 329), — although the decree of the court below was reversed because under it the contract was set aside for want of a revenue stamp — and the court, through Mr. Justice Sharswood, (afterwards Chief Justice), directed that she be awarded the “pro rata dividend which she with the other creditors will be entitled to receive of the fund in the hands of the administrators.” While the present antenuptial contract did not fix a sum certain for the support of the intended wife, as it would have been wiser to do, the orphans’ court has the power to determine a just, fair and reasonable amount, in case of disagreement as to the amount necessary to carry out the covenants and agreements of the husband:
 
 Ludwig’s Appeal,
 
 101 Pa. 535, 540; and we are not convinced that as the case was presented in the court below, the decision of that court as to the monthly amount required for the comfortable support of the widow was erroneous. But her rights must be enforced as a creditor, and
 
 pari passu
 
 with the other creditors. The special and preferential privileges otherwise secured to her as a widow,
 
 (Spencer’s Appeal,
 
 27 Pa. 218), were effectually relinquished:
 
 Tiernan v. Binns,
 
 92 Pa. 248;
 
 Lud
 
 
 *41
 

 wig’s Appeal,
 
 101 Pa. 585;
 
 Haendler’s Est.,
 
 81 Pa. Superior Ct. 168.
 

 As a creditor Mrs. Goeckel cau cite the administrator to file an account of his administration and can have him surcharged if he fails to account for all the assets of the decedent which came or should have come into his hands, or for any unauthorized, excessive or improper payments claimed as credits against the fund. As respects the decedent’s real estate, just as any other creditor, she had the right to take the steps provided by the Fiduciaries Act of 1917, supra, to continue the lien which the law gave her claim as a debt of the decedent for a year following his death:
 
 Kirk v. Van Horn, 265 Pa.
 
 549, 109 A. 522;
 
 Central-Penn Nat. Bk. v. Culp,
 
 320 Pa. 358, 182 A. 239;
 
 Pyles, Executrix, v. Bosler, Executrix,
 
 313 Pa. 548, 170 A. 897;
 
 Negley v. Reiser,
 
 324 Pa. 190, 188 A. 123;
 
 Higgins’ Est., 325
 
 Pa. 106, 188 A. 831. The recording of the agreement in the
 
 Recorder’s
 
 office ten days after the decedent’s death was not a compliance with the Fiduciaries Act, supra. See
 
 Higgins’ Est.,
 
 supra. But Mrs. Goeckel’s right to be paid out of any funds in the hands of the administrator must be determined in the orderly way for the distribution of a decedent’s estate — by account filed by the legal representative and the presentation of a claim against the balance found to be in the representative’s hands. And as to the real estate, the rights of a judgment creditor claiming a lien on land in the hands of the decedent’s heirs can be determined on a scire facias against the heirs. These rights cannot be summarily fixed by a proceeding of this kind against the administrator.
 

 Where the widow, after the death of her ^husband, claimed that the antenuptial contract was invalid, as in fraud of her rights, the issue has been raised in many ways: By an election to take against the will, followed by petition of the executor to strike it off:
 
 Clark’s Est.,
 
 303 Pa. 538, 154 A. 919;
 
 McCready’s Est.,
 
 316 Pa. 246,
 
 *42
 
 175 A. 554; by filing claim for $300 (now $500) exemption, and exceptions to the same:
 
 Ludwig’s App.,
 
 101 Pa. 535; by petition in the orphans’ court to set aside the agreement:
 
 Neely’s App.,
 
 124 Pa. 406, 16 A. 883; followed ,by issue to common pleas:
 
 Shoch v. Shoch’s Exrs.,
 
 19 Pa. 252;
 
 Kline v. Kline,
 
 57 Pa. 120; by partition proceedings:
 
 Bannan’s App.,
 
 1 Walker 1;
 
 Flannery’s Estate,
 
 315 Pa. 576, 173 A. 303; by action of ejectment:
 
 Rahe v. Real Estate Savings Bk.,
 
 96 Pa. 128.
 

 But where the widow affirms the agreement and presents a claim for money under it, she occupies the status of a creditor and must present her claim as any other creditor. As far back as
 
 Foster’s Lessee v. Whitehill,
 
 2 Yeates 259, it was held that the failure of the wife to record the marriage articles, under which she was granted an interest in real estate, postponed the interest so granted to the rights of a subsequent purchaser for value without notice.
 

 In the following cases the rights of the widow were determined on the audit of the executor’s or administrator’s account:
 
 Jones’s App.,
 
 62 Pa. 324;
 
 Whitmer’s Est.,
 
 224 Pa. 413, 73 A. 551;
 
 Smith’s App.,
 
 115 Pa. 319, 8 A. 582;
 
 Robinson’s Est.,
 
 222 Pa. 113, 70 A. 966;
 
 Krug’s Est.,
 
 196 Pa. 484, 46 A. 484;
 
 Bierer's App.,
 
 92 Pa. 265;
 
 Birkbeck’s Est.,
 
 215 Pa. 323, 64 A. 536;
 
 Coane’s Est.,
 
 310 Pa. 138, 165 A. 2;
 
 Bowman v. Knorr, (No. 1),
 
 206 Pa. 270, 55 A. 976;
 
 Kline’s Est.,
 
 64 Pa. 122;
 
 Clark’s Est.,
 
 303 Pa. 538, 154 A. 919. See also,
 
 Huffman v. Huffman,
 
 311 Pa. 123, 166 A. 570. Only in this way can the net balance, if any, in the hands of the administrator be determined and the amount, if any, to be paid the widow out of the same, be fixed. Certainly she cannot ask to be paid ahead of the expenses of administration and the debts of the decedent given priority by law. (Act of June 7, 1917, P. L. 447, Sec. 13a).
 

 There is no merit in the suggestion of counsel for appellee that the antenuptial agreement, on the death
 
 *43
 
 of Fred C. Goeckel, effected an equitable conversion of his real estate.
 

 Equitable conversion is defined as “The exchange of property from real to personal or from personal to real, which takes place under some circumstances in the consideration of the law, such as, to give effect to directions in a will or settlement, or to stipulations in a contract, although no such change has actually taken place.” Bouvier’s Dictionary (Rawle’s 3d Revision) Vol. 1, p. 668; 13 C. J. 852, et seq. See
 
 Cooper’s Est.,
 
 206 Pa. 628, 630, 56 A. 67;
 
 Chesnut v. Chesnut,
 
 300 Pa. 146, 153, 154, 151 A. 339;
 
 Loew’s Est.,
 
 291 Pa. 22, 26, 27, 139 A. 582;
 
 Paul’s Est.,
 
 303 Pa. 330, 335, 154 A. 503;
 
 Bender v. Luckenbach,
 
 162 Pa. 18, 22, 29 A. 295;
 
 Irwin v. Patchen,
 
 164 Pa. 51, 30 A. 436;
 
 Longwell v. Bentley,
 
 23 Pa. 99.
 

 It has no application here for the decedent left no will, and the antenuptial contract made no provision for the sale or other disposition of Mr. Goeckel’s real estate. It created no charge in favor of the wife on the husband’s lands. The only effect of the contract on his real estate was to relinquish and release any interest in it which the intended wife would otherwise have obtained by virtue of the marriage. The real estate remained real estate for all intents and purposes, the same after the contract as before, except that Mrs. Goeckel had released and relinquished any rights she otherwise would have had in it as his widow.
 

 The second assignment of error is sustained. The decree of September 27, 1937 is reversed at the costs of the appellee.
 

 [1]
 

 Including erroneously the widow’s exemption of $500. See
 
 Tiernan v. Binns,
 
 92 Pa. 248;
 
 Ludwig’s App.,
 
 101 Pa. 535;
 
 Haendler’s Est.,
 
 81 Pa. Superior Ct. 168.