## Wilson Estate.

Argued January 6, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Edwin Fischer,* for appellants.

*Charles J. Biddle* and *Abraham Wernick,* with them *Samuel E. Kratzok,* for appellees.

OPINION BY MR. JUSTICE PARKER, March 22, 1943:

The executors of John C. Wilson, deceased, filed a final account on November 27, 1939, showing that, after the payment of debts and a portion of the costs of administration, there remained unpaid a part of the fees due the executors. Thereupon, Miriam B. Wilson, widow of decedent, filed in the orphans' court a petition alleging that she was an unpaid creditor of the estate of her late husband in the sum of $45,000 by virtue of an antenuptial agreement and that there had been large over-

payments by the executors to the Corn Exchange National Bank and Trust Company and the receivers of the Sixth National Bank, and praying for a citation directed to those banks and the executors of the estate of her husband to show cause why the banks should not make sufficient restitution to the end that she would receive her proper share on distribution. The court below, after a reference of the matter to an auditor and master and a recommendation by him that the petition be refused, so ordered. The widow died in the interim, and her administrators c. t. a. have appealed from that order.

On October 8, 1910, John C. Wilson and Miriam B. Arthur, the appellant, entered into an antenuptial agreement by which she was to receive, if she survived him, "in lieu of her dower interest" in his separate estate, "one-sixth of all of the personal property of which the said John C. Wilson may die possessed and a one-sixth interest for and during the term of her natural life in all of the real estate of which the said John C. Wilson may die seized, with the exception of the residence of the said John C. Wilson, situated in Darby Borough, Delaware County, Pennsylvania, and all the personal property therein and thereon contained which property, real and personal shall descend to and vest in the heirs-at-law of the said John C. Wilson as aforesaid." The agreement was consummated by marriage and John C. Wilson died on January 9, 1931, leaving to survive him his widow and five children by a former marriage. The inventory and appraisement filed showed personal property of the value of about $244,000. Decedent also left eight parcels of real estate. There was a large shrinkage in values, by reason of the depression, before the property was sold and a considerable indebtedness of his was largely increased as a result of bank failures so that contingent liabilities became pressing obligations.

As pointed out by the master and court below, an antenuptial agreement ordinarily constitutes the wife a creditor rather than an heir: *Jones' Appeal*, 62 Pa.

324; *Coane's Estate,* 310 Pa. 138, 165 A. 2; *Goeckel's Estate,* 131 Pa. Superior Ct. 36, 198 A. 504; *Brown's Estate,* 340 Pa. 350, 17 A. 2d 331. The court below held that the appellant, by her conduct subsequent to the death of her husband, had elected to regard herself as an heir or legatee rather than as a creditor and that she was estopped by her conduct and acts from any right to require restitution from the creditors.

A further reference to what Mrs. Wilson did after her husband's death, in the light of the circumstances, will show that the court reached a correct conclusion. The widow was sui juris and had the advice of competent counsel. All concerned realized in a short time the shrinkage in the value of decedent's property and estate and a question arose as to the interest which Mrs. Wilson was entitled to take by virtue of the antenuptial agreement. There was a contention that she was entitled to receive only one-sixth of the personal property after the payment of decedent's debts, the same as the other heirs. In this connection it will be noted that decedent left five children by a former marriage. This is suggested by appellees as ground for an inference that she was to receive by virtue of the antenuptial agreement only one-sixth of the *net* personal estate. In negotiations which followed between the executors, the principal creditors, and the widow, her attorney advised her that the executors would "have to take care of the creditors first". In any event, she would not be a preferred creditor and was therefore interested in seeing that as much be realized from personal assets as possible.

With this background, she demanded and received her $500 widow's exemption. This she was not entitled to receive if she stood strictly on her rights as a creditor as she had given up that right by her antenuptial agreement: *Ludwig's Appeal,* 101 Pa. 535, 538; *Goeckel's Estate,* supra, p. 42. She knew that the claims of the banks aggregated $107,500 and interest, and that one of the banks had taken legal steps to make these claims a

lien against the real estate of the decedent. The other bank was paid in full before the year expired. In short, it was apparent that under any construction of the antenuptial agreement, if the property were forced to an immediate sale her interests would be jeopardized.

With full knowledge of these facts, the Corn Exchange Bank, the widow, the other heirs, and the executors entered into written contracts, under seal, dated February 20, 1932, and October 17, 1932. By these agreements, Mrs. Wilson was given stock of the approximate value of $4,700, and full provision was made for the payment of the claims of the bank. It was provided that sales could be made of some of the real estate and the proceeds would be held for the protection of the bank's lien. The agreements disclose grounds for an inference that the claims of the bank should be first paid and that she should receive her share after the payment of other debts. In various of the written transactions passing between the parties, she refers to herself as an heir and not as a creditor, showing that what she was to receive of the personal property was one-sixth of the personal property after payment of debts, the same as each child. She did not take any steps to bind the real estate for any indebtedness due to her as a creditor. Not only so, but notwithstanding the fact that she knew that an account had been filed, but not audited, on February 29, 1932, she did not present her petition for a citation until about nine years after the death of John C. Wilson, or complain of payments to the banks before she was paid, an indication of laches which has an important bearing on the question of estoppel.

It will be noted that the Corn Exchange Bank finally satisfied the liens which they had placed against decedent's real estate, and the receivers of the Sixth National Bank refrained from entering a lien on the real estate when its claim was paid in full within one year. In short, the two banks, relying on the agreements and the conduct of the appellant, have been placed in a position

to which they cannot now be returned. There is present every element of an equitable estoppel. She assented to the treatment of her claim as one for the one-sixth of the personal estate after payment of decedent's debts. She is now estopped by her acts from claiming to the contrary.

The order of the court below is affirmed at the costs of the appellant.