## Zeitchick Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Irving J. Katz,* for exceptant.

*Leonard B. Rosenthal,* contra.

SAYLOR, J., January 15, 1965.—Harry Zeitchick died December 14, 1963, survived by a widow, Sophie Gross Zeitchick, and a son, Milton Zeitchick. He left a will, duly probated, the provisions of which are set forth in the statement of proposed distribution. . . .

Decedent and the wife by whom he is now survived, then Sophie Gross, executed an antenuptial agreement dated October 5, 1956, by which he agreed to devise to her premises 6474 Anderson Street, Philadelphia, and further declared:

"Since it is contemplated that the first party may sell the real estate after the marriage but before his decease then he agrees that under such circumstances he would provide in his Will that in lieu of the said property 6474 Anderson Street that he shall give, devise and bequeath to the said Sophie Gross not less than Ten thousand dollars in cash."

By Item 6, page 5, of the agreement, Sophie Gross "further acknowledges that she has been fully informed" that the decedent had executed a will to carry out the agreement in which will he devised premises 623 South Sixth Street to his son, Milton Zeitchick, "and she agrees that in consideration of her marriage to the first party and the other covenants herein contained that she will take no steps to contest the above mentioned Will or to prevent the bequest therein contained from taking full force and effect, to the same extent as though the parties to this agreement had never married."

It is noted that decedent and his son ran a partnership business at 623 South Sixth Street, Philadelphia, and also that decedent bequeathed to his son decedent's half interest in that business.

The parties in interest admit the validity of the antenuptial agreement and admit that the status of the widow is that of a creditor. The will which decedent executed did in fact make the provisions called for by the agreement.

It is admitted that premises 6474 Anderson Street, Philadelphia, were sold by the decedent. By the terms of the antenuptial agreement and of decedent's will Sophie is now entitled to receive $10,000 in cash.

The account as originally filed has been superseded by a restated account. From an examination of the account it is not clear whether the partnership business has been completely liquidated or whether decedent's interest therein or the proceeds of sale of the interest have been properly accounted for. It seems clear, however, that there is far less than $10,000 in the principal, personal estate account, and that the main asset of the estate is a parcel of real estate valued in the account at $10,500. The account fails to identify this parcel of real estate except by reference to the inventory, from which it is ascertained that it is premises 623 South Sixth Street. It is, therefore, clear that if the widow is to be paid her $10,000 it would be necessary to liquidate this parcel of real estate.

The argument is made that the widow may be paid only from the personal estate. Ignoring for the moment any possible effect of the waiver clause of the sixth item, it is clear that there is no validity to this argument. In the antenuptial agreement decedent contracted to pay Sophie "Ten thousand dollars in cash." He did not specify "from" cash. If X agrees to purchase Y's house for $10,000 "in cash," can X avoid

the contract because at settlement he does not have $10,000 in cash? It is obvious that the specification of a medium of payment has no effect upon the obligation to make payment in the absence of an express stipulation to that effect, as by saying, "I agree to pay $10,000 in cash if at the time I have that much cash."

It is next contended that even though Sophie has the right as a creditor to proceed to collect the $10,000, she cannot do so with respect to 623 South Sixth Street, because of the waiver clause in the sixth item. There is no question as to the ability of the parties to insulate or release a given item of property from Sophie's claim. Even a judgment creditor having a lien on several parcels of real estate can agree to release a particular tract from the lien of his judgment. The only question is whether by the language used in the antenuptial agreement she has done so.

Counsel for the parties have not given due consideration to the closing words of the sixth paragraph: "to the same extent as though the parties to this agreement have never married." To what does this clause relate, and what is its meaning? Looking at the complete provision, the instrument reads: ". . . she will take no steps to contest the . . . Will or to prevent the bequest therein contained from taking full force and effect, to the same extent as though the parties had never married."

Whether Sophie was married to the decedent or not would not have any effect upon her ability to contest his will, assuming that she had an interest in the estate. It is, therefore, clear that the "to the same extent" provision can apply only to modify "prevent the bequest." But the only way in which a wife can prevent a bequest from taking effect, which is not available to a nonwife, is by an election to take against the will. The "prevent the bequest" provision must therefore be read as referring to preventing the bequest

from taking effect by taking against the decedent's will.

Sophie has not contested the will, nor has she filed an election to take against the will. Whether she was married or single would have no effect on her standing as a creditor, and therefore the provision under consideration does not bar her from asserting her rights as a creditor. In any event, the rights of the widow should not be taken away from her by vague language which would not convey to a reasonable person that when she signed the agreement she was agreeing that she would not be paid the $10,000 unless, in addition to premises 623 South Sixth Street, there was sufficient other property to pay her claim.

If the words of the antenuptial agreement are given a technical construction, it is also to be noted that the waiver clause has no relation to the real estate. Decedent refers to the fact that he has "bequeathed and devised" the real estate and his one-half interest in the partnership, but Sophie obligates herself only with respect to preventing the bequest from taking effect. She has not made any undertaking with respect to the devise of the real estate, and it is only with the real estate that the court is now concerned.

The reason for preserving the devise of the real estate to the son, if in fact decedent had intended to do so in every case, has ceased to exist. As long as the partnership business was continued by the son it can be perceived why decedent desired his son to have the real estate on which the business was physically located. With the business now having been liquidated, there is no reason why the agreement should be interpreted to pay the son at the expense of the widow.

It is not necessary to pursue these considerations, for it has already been determined that Sophie undertook only to refrain from contesting the will or electing to take against it.

As Sophie claims as a creditor, and decedent's son claims as a donee, no marshalling will be made of the assets of the estate so as to require the payment of Sophie's claim from any particular fund.

Sophie Gross Zeitchick will be awarded the sum of $10,000 as a creditor. . . .

And now, January 15, 1965, the account . . . is confirmed nisi.

### OPINION SUR EXCEPTIONS

LEFEVER, J., March 26, 1965.—Where a widow is bequeathed $10,000 in cash, pursuant to an antenuptial contract, are her rights in decedent's estate superior to those of his son to whom he specifically devised and bequeathed real estate and personalty?

"An antenuptial agreement makes the wife a creditor of her husband's estate. . . . The wife is obliged to present her claim under an antenuptial agreement as any other creditor. . . . The fact that the husband leaves a will which refers to, and recognizes his obligation under, an antenuptial agreement, does not change the status of the widow from creditor to testamentary beneficiary. . ." 3 Partridge-Remick, Pennsylvania Orphans' Court Practice, sec. 25.03, pp. 229 and 230. Accord Goeckel's Estate, 131 Pa. Superior Ct. 36; Wolf's Estate, 65 York 198.

In Brown's Estate, 340 Pa. 350, 352, the court stated:

"It is appellant's theory that she should be regarded not as a creditor of the estate, but as a legatee under the will, because, as she argues, the will embodied and superseded the antenuptial agreement and made it the subject of an independent bequest. This view is untenable under the authorities. By virtue of the agreement

she became a creditor of the estate: Jones's Appeal, 62 Pa. 324; Coane's Estate, 310 Pa. 138, 165 A. 2; Goeckel's Estate, 131 Pa. Superior Ct. 36, 198 A. 504. The fact that the will referred to the agreement and recognized its obligation did not merge it, or in any way affect it as an enforceable instrument, or change the widow's status to that of a testamentary beneficiary: Bannan's Appeal, 1 Walker 1; Bowman v. Knorr (No. 1), 206 Pa. 270, 55 A. 976; Coane's Estate, 310 Pa. 138, 142, 143, 165 A. 2, 4."

It is axiomatic that all claims of creditors must be paid in full before devisees and legatees, specific or general, are entitled to receive any portion of the estate. Therefore, in the absence of any special circumstances, the widow in this case is entitled to receive her $10,000 even though it exhausts, in whole or in part, the real estate and personalty specifically devised and bequeathed: Goeckel's Estate, supra.

Exceptant vigorously argues that in the antenuptial agreement the widow waived or released any right she might have in and to the devised real estate and the bequeathed interest in the partnership. Paragraph 6 of that agreement provided, inter alia:

"The said party further acknowledges that she has been fully informed that the first party has made and executed a Will under the terms of which . . . he has bequeathed and devised the real estate situate and known as 623 South Sixth Street, Philadelphia, Pennsylvania, and his one-half interest in the partnership of Harry Zeitchick and Son, to his son Milton Zeitchick and she agrees that in consideration of her marriage to the first party and the other covenants herein contained that she will take no steps to contest the aforementioned Will or to prevent the bequest therein contained from taking full force and effect, to the same extent as though the parties to this agreement had never married."

The widow has taken "no steps to contest the afore-mentioned Will." The proper method of contesting a will is to take an appeal from the register's probate thereof. No such appeal has been filed. Furthermore, the widow has done nothing "to prevent the bequest therein contained from taking full force and effect, to the same extent as though the parties to this agreement had never married." The proper legal means for a widow to do this is to file an election to take against the will. The widow has not done this. Inasmuch as the one year period from the date of death for filing such election has expired, she is now deemed in law to have elected to take under the will. It follows that she has done nothing contrary to her covenants in the antenuptial agreement.

The widow has restricted her claim against this estate to that of a creditor. This is her right. This right was vested in her by the antenuptial agreement. That her claim as creditor adversely affects and diminishes the son's share of his father's estate is not the fault of the widow. It is owing to the fact that decedent's testamentary estate was less than he and his son anticipated.*

For the reasons ably stated in the adjudication, and those added herein, it is clear that the widow is a creditor and as such is entitled to receive the first $10,000 of the assets of the estate, whether real or personal.

It has been the long established practice of this court for the auditing judge to dispose of all questions con-

---

* It is to be noted that paragraph 6 of the antenuptial agreement states that the decedent "is the owner of several paid-up life insurance policies on his life in the Metropolitan Life Insurance Company in the approximate total sum of Fifty-five Thousand Dollars in which policies first party's son Milton Zeitchick is the designated principal beneficiary . . .". It was conceded at the oral argument that the principal of this insurance or a substantial portion thereof was paid to the son at decedent's death.

476

cerning the account which are presented at the audit, and to make awards giving effect of his rulings. See Vasselakis v. Vasselakis, 371 Pa. 268, 272. This was not done in the instant case.

Accordingly, the exceptions are dismissed and the matter is referred back to the auditing judge for further consideration in accordance with this opinion.